CENTRAL NATIONAL BANK & TRUST COMPANY OF ROCKFORD, Plaintiff-Appellant, (FRANK E. SUDDARTH, Intervening Petitioner), v. CONSUMERS CONSTRUCTION COMPANY, Defendant-Appellee.

(No. 71-202;

Second District—April 25, 1972.

Pedderson, Menzimer, Conde & Stoner, and Jerome J. Downey, both of Rockford, for appellant.

Schlifkin & Berman, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff appeals from a judgment denying recovery from defendant, Consumers Construction Co., for amounts allegedly loaned by plaintiff to defendant's subcontractor in reliance on letters executed by the defendant.

On September 5, 1969, James D. North and Frank E. Suddarth, who, with Donald J. Sutton, represented three businesses found by the lower court to be operating in partnership, met with officers of plaintiff bank to discuss the financing of a construction project on which their companies acted as a subcontractor, and defendant was the general contractor. Since their financial position was weak, the bank refused to loan money on the partners' signatures alone. Then, on September 8th, the partners submitted to the bank two letters addressed to the bank and signed by Consumers Construction Co. The first stated that Consumers had a contract with the subcontractor, that on approximately the 15th

of every month the company would pay for 90% of the work in place, and that the company banked at the Park National Bank in Chicago. The second stated that Mr. Sutton, as of that date, had completed work in the amount of $8,850, which would be paid during the week of September 15th by a check payable to Sutton and plaintiff bank. Upon receipt of the letters, plaintiff loaned 80% of the amount stated therein to the partnership, taking its promissory note in return. As stated in the letter, a check for $8,850 was received from Consumers, whereby the note was canceled, and the remaining 20% was deposited in the partnership account.

Approximately twenty-five more letters addressed to plaintiff and signed by defendant were received between September, 1969 and February 2, 1970. These were in the form of "retention" letters, stating only that the subcontractor had certain retention balances due. The plaintiff again loaned 80% of the amounts stated in each letter, and again received checks for all of the amounts from Consumers.

Thirteen more letters, representing payments totaling $34,166.50, were received in the period from February 4, 1970 to March 18, 1970. As was the case with all but two of the previous letters, they were hand carried to the bank by one of the partners. Their language, with minor differentiations, was as follows:

Central National Bank and Trust Co.
201 North Main Street
Rockford, Illinois 61101

Re: Parkside Manor
Belvidere, Illinois

Dear Sir:
(Name of subcontractor) has the following draw: ($    ) This has been approved by us, as of this date, and will be paid to Mr. Sutton approximately the week of the 15th of (April-May). The check will be made payable to D. J. Sutton Builders and to the Central National Bank and Trust Co.

Very truly yours,
/s/ Raymond Reichard
Raymond Reichard
Consumers Construction Co.

As the bank received each letter, it again loaned 80% of the amounts set forth. About the middle of March, the subcontractor failed to provide waivers of liens on the work referred to in the thirteen letters, which put them in default of their contract with Consumers. Defendant took over the completion of the work which was to have been performed by

the subcontractor and failed to remit the $34,166.50 to the bank, asserting that it owed the subcontractor nothing and therefore owed the bank nothing. The bank placed its notes against the subcontractor in judgment, but the subcontractor became bankrupt, and the judgment remains unpaid. This suit and the suit in which the bank placed its notes in judgment against the subcontractor parties were consolidated.

The trial court, sitting without a jury, found for defendant on the theory that the plaintiff was a third party beneficiary of a contract between the defendant and the subcontractor, and "where a contract is entered into by two parties for the benefit of a third, the third party's rights are subject to the equities between the original parties."

The trial court decision must stand or fall on the basis of the legal effect of the thirteen letters, as viewed in light of the previous letters transmitted. Appellant contends that these letters formed a contractual relationship between Consumers and the bank, giving the bank a direct right of action against Consumers without regard to the rights of the subcontractor. Consumers argues that the trial court was correct in depicting this as a third party beneficiary relationship, or alternatively that the bank received these letters by assignment from the subcontractor, and in either case have no greater rights than those of the subcontractor.

Defendant contends that plaintiff's theory of a direct contract between it and the defendant was not presented to the trial court and cannot be advanced here for the first time. Defendant points to the letters attached to the complaint and to the allegation that "defendant has neglected and refused to pay the draw *as guaranteed* by its letter attached as an exhibit." (Emphasis added) We do not conclude that plaintiff is limited to proving a "guarantee" in any technical sense. Under the pleading and proofs plaintiff may properly raise as an issue here whether the letters, together with the circumstances surrounding them, created a contractual obligation by defendant to pay to plaintiff the sum of $34,166.50 drawn by the subcontractors.

The trial court determined that the contract between the defendant contractor and the subcontractor also established the relationship between the plaintiff and the defendant. Plaintiff was thus held to be a third party beneficiary of this contract. The legal result which would follow from this conclusion was correctly stated to subject the third party beneficiary to the equities existing between the primary contracting parties. Since the subcontractor defaulted under the agreement by failing to submit waivers for its draw, it would then follow that the plaintiff, if it derived its rights from the subcontractor, would similarly be barred.

■■ We believe the premise to be incorrect, however. To say that plaintiff is a third party beneficiary of the contract between the contractor and the subcontractor is to overlook the effect of the letters. The letters did not constitute promises by defendant to the subcontractor for the benefit of plaintiff. Rather, these were representations addressed directly to plaintiff, having for their only purpose the inducement of loans to the subcontractor.

We conclude that these letters constituted direct negotiations between the bank and Consumers, and resulted in a contract between the two. An examination of the circumstances shows that these letters were addressed to plaintiff, made specific representations designed to induce the plaintiff to loan money to the partnership, and resulted in such loans being made. Although the bank also took financial statements and notes from the subcontractor, its primary reliance in making these loans was on the letters received, as is evidenced by the fact that the loans were always of 80% of the amounts stated in the letters. That the letters were usually delivered by the partners rather than coming directly from defendant is of minor import, since they were addressed to plaintiff and made specific representations to the plaintiff.

■■ Defendant contends, in effect, that any reliance on plaintiff's part was unreasonable, because plaintiff is held to knowledge of the underlying contract between defendant and the subcontractor which required that waivers of liens must be provided before any amount became payable. In fact, Kenneth May, a Vice President of the bank, testified that he was aware of this contractual provision. But this is not to say that the bank had knowledge that no waivers of liens had been provided at the times they received these letters. The letters were silent as to waivers of liens, and stated unconditionally that certain amounts then due the subcontractor would be paid to the plaintiff and subcontractor jointly. The letters indicated that, while the money they represented was payable in the future, it had already been earned and was then due to the subcontractor. Donald Sutton testified that the fact that waivers had not yet been furnished when the bank received these letters never came up in discussions with the bank. Although the bank knew of the requirement that waivers be furnished before moneys became payable, it was reasonable for the bank to assume that such waivers had already been provided before letters containing such unequivocal commitments were prepared. This is especially true in light of the fact that over twenty-five previous letters, most of which contained no specific representations regarding payment as did these letters, had been honored by the defendant.

■■ While there is some question whether Consumers made any direct

promise to pay the bank, this is the only reasonable inference which may be drawn from the statement that checks would be made payable to the subcontractor and the bank. The loans were made to the subcontractor as the letters signed by Consumers were delivered. It is only reasonable to conclude therefore that the bank relied upon the unconditional commitments of Consumers in making the loans. Otherwise the letters would have had no purpose. Consumers' representations in the letters, under the circumstances, constituted offers to pay the amounts stated in return for the making of the loans to the subcontractor. The making of the loans by the bank, being the thing bargained for, constituted acceptances of the offers. See *First Nat. Bank of Gallipolis v. Marietta Mfg. Co.* (W.Va. 1967), 153 S.E.2d 172, 176, 177.[1]

■■ That offers can be accepted by performance of the desired acts is well established. (17 Am.Jur.2d Contracts (1964), Sec. 45.) A similar position is taken in the Restatement of Contracts, Sec. 45, which states:

> "If an offer for a unilateral contract is made and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract  *  *  *."

Also see *Star Brewery v. Farnsworth* (1898), 172 Ill. 247, 248-250.

■■ Consideration for defendant's promises was provided both in the sense that the making of the loans by plaintiff constituted a detriment to the plaintiff, and because the loans benefited defendant in that its subcontractor would have sufficient funds to enable it to perform under its contract with defendant. (*People v. Eagle Food Centers Inc.* (1964), 31 Ill.2d 535, 538; *Riddle v. LaSalle Nat. Bank* (1962), 34 Ill.App.2d 116, 120.) In any event, benefit to the subcontractor, a third party, may constitute sufficient consideration for defendant's promise. *Lauer v. Blustein* (1971), 1 Ill.App.3d 519; *Riddle v. LaSalle Nat. Bank, supra,* at 119-120.

However, the reasonable expectation of plaintiff, as based on the past course of conduct, was only that it would receive that part of the amounts stated in the letters which was loaned to the subcontractor. The checks were to be payable to the plaintiff and the subcontractor, and that part of the money not loaned was to be deposited in the partners' account. To award plaintiff the full amount stated in the

---

[1] Plaintiff has also cited *First Granite City National Bank v. Champion* (1970), 130 Ill.App.2d 970, 268 N.E.2d 35. This involves a guarantee and is inapplicable. While *Nello L. Teer Company v. Kanawha Valley Bank* (4th Cir. 1955), 227 F.2d 306 is also inapposite in that an assignment was in issue, the principle that the contractor became bound because of its representation to the bank creates a similarity. While *Teer* was distinguished in *United States v. Thompson and Georgeson, Inc.* (9th Cir. 1965), 346 F.2d 865, the basis for the distinction was that there was no separate promise to pay specific invoices as contained in *Teer*.

letters would unjustly enrich it to the detriment of the defendant, who was required to expend large sums of money due to the default of the subcontractor. We award plaintiff 80% of the amount stated in the letters, or $27,333.20, as full expectancy damages.

The judgment below is reversed. The cause is remanded with directions to the trial court to enter judgment in favor of the plaintiff, Central National Bank & Trust Company of Rockford, and against the defendant, Consumers Construction Co. in the amount of $27,333.20 and costs.

Reversed and remanded with directions.

T. MORAN and GUILD, JJ., concur.