(No. 52213.—

JANICE J. BOND *et al.*, Appellees, v. THE BOARD OF EDUCATION OF MASCOUTAH COMMUNITY UNIT SCHOOL DISTRICT NO. 19, Appellant.

*Opinion filed June 20, 1980.*

244

WARD, J., dissenting.

Baker & Scrivner, of Belleville (Harold G. Baker, Jr., of counsel), for appellant.

Drach, Terrell & Deffenbaugh, P.C., of Springfield, for appellees.

Lambert M. Ochsenschlager, Richard L. Horwitz & Wayne F. Weiler, of Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for *amicus curiae* Aurora East Public School District 131.

PER CURIAM: Plaintiffs, 23 contractual continued service (tenured) teachers, were employees of the defendant board of education. They brought this declaratory judgment action in the circuit court of St. Clair County, seeking to be paid according to the salary schedule in effect for teachers who had signed contracts for the 1977-78 school year. Plaintiffs had declined to sign con-

tracts tendered to them for that time period. The circuit court held in favor of plaintiffs, and the appellate court, by summary order, affirmed. (71 Ill. App. 3d 1115.) We granted the defendant's petition for leave to appeal.

On May 27, 1977, 90 days before the commencement of the school year, defendant tendered individual contracts to its tenured teachers. Under the contract, the teacher was given 10 days in which to sign, but was assured that both signers and nonsigners would retain tenure rights; that no teacher was required to sign, and nonsigners could continue employment under the provisions of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 1–1 *et seq.*). The contract contained a clause establishing that a signing teacher would refrain from participation in any work stoppage, sit-in or strike. It offered tenured teachers a salary increase as set forth on an attached schedule, and stated that, although that amount might be increased, it would, under no circumstances, be reduced. An accompanying letter advised that nonsigning teachers would receive the same salary as had been paid during the 1976-77 school year.

Approximately 175 teachers signed and returned the contracts. In a letter dated July 25, 1977, defendant reminded those who had not signed that their salaries for the ensuing school year would be exactly the same as for 1976-77, without any longevity or educational increments. On August 15, 1977, defendant granted, to teachers who had not yet signed, nine additional days in which to do so. Plaintiffs did not sign contracts. They did, however, teach for the 1977-78 school year, which began on August 25, 1977, and performed duties the same as teachers who had signed contracts. Plaintiffs were paid the same salaries as they had been paid the previous school year.

The defendant here contends that, because the no-strike clause was a valuable consideration, the paying of a salary increase to only those teachers who signed 1977-78

contracts was not arbitrary, capricious or unreasonable. Plaintiffs counter that the contracts gave defendant nothing it could not already expect, in that teachers, as public employees, are prohibited from striking; that the contract, therefore, contained no valid consideration on the part of signing teachers, making the defendant's refusal to pay plaintiffs the increased salary arbitrary, unreasonable and discriminatory and based upon an improper classification. Plaintiffs also contend that, because they were not paid the increase, they were subjected to a reduction in pay.

In determining the statutory authority of school boards over teachers' salaries, this court stated, in *Richards v. Board of Education* (1960), 21 Ill. 2d 104, 109, that a school board's discretionary control in that regard is subject only to limits expressly fixed by the School Code and "to constitutional prohibitions against actions that are arbitrary, discriminatory and unreasonable, or based upon an improper classification." In *Richards,* the board adopted a salary schedule based upon professional growth. Because professional growth increases the ability of teachers and their value to the school system, it was held proper to compensate teachers on this basis, such classification being "reasonable, natural and based on substantial differences germane to the subject." 21 Ill. 2d 104, 110.

Both parties assert a conflict between the appellate court cases of *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, and *Littrell v. Board of Education* (1977), 45 Ill. App. 3d 690. Plaintiffs urge that the present case should be controlled by *Littrell.* Defendant argues that this court should favor *Davis.* We find that the instant case neither parallels nor is in conflict with *Littrell* or *Davis.*

In *Littrell,* on the first day of school, the board tendered a "contract" that did not contain a no-strike clause. In fact, the *Littrell* "contract" was apparently devoid of consideration and imposed no duties or obli-

gations on signing teachers, yet a salary increase was offered only to those who signed. Under the circumstances, the action of the board in increasing the salaries of only the teachers who signed was arbitrary and unreasonable, and not based upon any difference germane to the subject.

In *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, the board responded to a statement of the representative educational association, which statement indicated the possibility of a strike, by tendering, more than 60 days before the commencement of the school year, a new contract with salary increases and other benefits. The tendered contract included a no-strike provision. On review, however, consideration for the contract was not at issue. The question was merely whether the board acted unreasonably or arbitrarily in making a salary distinction between teachers who signed or declined to sign a timely tendered contract. We agree with the conclusion reached in *Davis* and find that, under the proper conditions, a salary distinction between signing and nonsigning teachers is not arbitrary or unreasonable. (Contrary to plaintiffs' argument, *sub judice,* the *Davis* court did not "base its decision on" there having been a reduction in salaries, nor did it "accept the proposition that" there had been a reduction in salaries. The question of a reduction was, in fact, never broached.) The *Davis* court held that nonsigning teachers who returned for the new school year were to be paid under the continuing terms of the prior year's contract and were entitled to increments due thereunder.

Neither *Littrell* nor *Davis* presented the exact facts and issues presently before us. Vital to our considerations here is the mandate of article X, section 1, of the Illinois Constitution (Ill. Const. 1970, art. X, sec. 1), which declares that a fundamental goal of this State is to provide for the free, quality education of all people (to the best of their ability), and directs that the State shall provide for an

efficient system of educational institutions and services to implement said goal. (See *Board of Education v. Redding* (1965), 32 Ill. 2d 567, 572; *Allen v. Maurer* (1972), 6 Ill. App. 3d 633, 639-40.) The responsibility for effectuating this constitutional mandate is delegated to the school boards.

Complementary to the constitutional mandate is the public policy against strikes by public employees, first established by this court in *Board of Education v. Redding* (1965), 32 Ill. 2d 567, 571-72, and subsequently reiterated in *Board of Education v. Kankakee Federation of Teachers Local No. 886* (1970), 46 Ill. 2d 439, 441, *City of Pana v. Crowe* (1974), 57 Ill. 2d 547, 550-51, and *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412. As such policy relates to teachers, it was intended to avoid disruptions of the educational process and to provide an element of stability, not only in the students' educational progress but also in the planning and budgetary considerations of the boards in the performance of their mandated duties. Plaintiffs argue that, because the prohibition against strikes exists as a public policy, those teachers signing a contract agreeing not to participate in a strike offer nothing more to the defendant by way of consideration than is already imposed upon them and others by existing public policy.

In response we must first point out the obvious: the public policy against strikes by public employees has been frequently and blatantly ignored. Defendant posits, however, and it is not disputed by plaintiffs, that where this policy has been included within a contract, imposing a personal and individual responsibility on a teacher to avoid such conduct, participation of signing teachers in strikes has been conspicuously absent.

A school board is charged not only with providing for the continuum of educational services, but with the fiscal management incidental thereto. Frequently, compelled to

offer deserved salary increases to their teachers, boards may be forced by that increase to commit the totality of their budgets, eliminating or minimizing any budgetary reserve. Boards must, as much as possible, contain educational expenses for taxpayers and avoid deficit spending. To this end, they must utilize every legitimate means to reduce the risk of subsequent, untoward expenses such as those that might accrue as the result of a strike. This court recognizes a contractual no-strike clause—the embodiment of public policy—as a reasonable and practical consideration extracted by a board to better enable it to perform its constitutionally mandated duties.

Plaintiffs concede, by their brief, that the classification is reasonable if defendant can point to some provision in the contract which gave it additional consideration to justify paying signing teachers a salary higher than that of nonsigners. In that we have found a no-strike provision to be consideration, it follows that the classification between signers and nonsigners is reasonable and justifies the salary differential.

By this recognition, we negate the plaintiffs' and appellate court's statement that "paying [plaintiffs] less than other tenured teachers of like experience and education for performing like duties simply because they did not execute the written contracts presented to them was arbitrary and unreasonable." The salary differential applied not "simply because" plaintiffs did not sign a contract, but because, by refusing to sign, they avoided a personal commitment to a consideration which was of practical benefit to the defendant.

The law does not require tenured teachers to sign a new contract, and those who decline the option of signing cannot be removed for their failure to do so. (*Donahoo v. Board of Education* (1952), 413 Ill. 422, 427; *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, 646.) "Contractual continued service shall continue in effect

the terms and provisions of the contract with the teacher during the last school term of the probationary period" or continue at a salary not reduced from that of the previous year, except under specified conditions. (Ill. Rev. Stat. 1977, ch. 122, par. 24—11.) For this reason, among others, the terms of continued employment for a tenured teacher differ from those of the average employment contract. Under the latter, the employer offers a salary, the amount being totally discretionary, in exchange for a particular job performance, and if the employee is unwilling to accept the terms, employment may be terminated. A tenured teacher, however, has the option of declining the new contract and continuing employment, under the provisions of the School Code, at a salary and according to the terms of the prior year's contract. "[I]f an offer was properly made and unconditionally accepted, it would be in force according to its terms, but if not accepted or conditionally accepted, then the provisions of the Teacher Tenure Law apply." (*Donahoo v. Board of Education* (1952), 413 Ill. 422, 427.) Having neither signed a new contract nor tendered a resignation prior to the 60 days before the beginning of the school year, plaintiffs' employment continued under the terms of the Code.

Plaintiffs assert that because they were paid a salary below that of contractually obligated teachers, yet performed the same work, their salaries were reduced in contravention of the provisions of the statute. (Ill. Rev. Stat. 1977, ch. 122, par. 24—11.) We disagree. Plaintiffs were informed that, if they did not sign the contract, they would have the right to be paid a salary determined under the School Code. Thereunder, they were entitled to continue employment at a salary and under the terms of the prior year's contract. They did, in fact, continue at that salary.

The terms of the prior year's contract, however,

included a schedule of longevity and educational salary increments, and defendant was in error in withholding these increments from plaintiffs, and plaintiffs should be paid any salary increments due under the 1976-77 contract terms.

For the foregoing reasons, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE WARD, dissenting:

Mr. Justice Holmes' dissent in *Northern Securities Co. v. United States* (1904), 193 U.S. 197, 48 L. Ed. 679, 24 S. Ct. 436, may be remembered mainly for President Theodore Roosevelt's reaction to it, but some of the dissenting language should be recalled for cases such as this one. Holmes wrote:

"Great cases, like hard cases, make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend." 193 U.S. 197, 400-01, 48 L. Ed. 679, 726, 24 S. Ct. 436, 468.

True, this is not a great case but it is in a sense a hard case and is one that I feel has caused the majority to bend and breach principles that should govern here.

Strikes by public employees violate the expressed public policy of this State and are unlawful. The promise here was simply to forbear from acting illegally. The promise of a forbearance already imposed by law cannot

252

be a sufficient consideration, and an agreement founded upon it is contrary to public policy. 1 S. Williston, Contracts sec. 132 (3d ed. 1957).