RALPH A. ARDUINI, Plaintiff-Appellant, *v.* BOARD OF EDUCATION, PONTIAC TOWNSHIP HIGH SCHOOL, DISTRICT 90, LIVINGSTON COUNTY, Defendant-Appellee.

Fourth District    No. 16504

Opinion filed March 6, 1981.—Rehearing denied April 7, 1981.

926

GREEN, J., specially concurring.
CRAVEN, J., dissenting.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellant.

Thompson, Strong & Blakeman, of Pontiac (Kenneth L. Strong, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

"Liquidated damages" policy as to teachers' contracts.

Resignation of a tenured teacher.

Does a school board have authority to adopt such a policy?

If so, was it enforceable as to this teacher?

Yes—to both inquiries.

We affirm.

We are required in this case to determine the validity of the following liquidated damages policy adopted by defendant school board:

"All contracts between the Pontiac Township High School and certificated personnel are entered into in good faith with the intent that the obligations stated in or implied by the contract are to be met fully.

Procedures for resignations to be effective at the close of a contractual period are adequately covered in the statutes.

Resignations terminated during a contractual period are to be mutually agreed upon by the employee and the Board of Education. These resignations, when initiated by the employee, not only cause undue hardship on the students, but create additional concern for the Board of Education and necessitate the expenditure of funds in seeking a replacement.

When a resignation is initiated by an employee for reasons other than for extenuating circumstances, the resigned shall pay the school district four (4) per cent of contract salary as liquidated damages for breach of employment contract. Employee initiated resignations will not be honored until a satisfactory replacement assumes the duty of the resigner.

Reference to this policy shall be made in all certificated employee contracts and, or notices of continuance of employment."

Here is the sequence of events that led to the instant litigation:

| | |
|---|---|
| August 6, 1979 | Defendant adopted its liquidated damages policy; |
| August 27, 1979 | Plaintiff, a tenured teacher, began his duties for the 1979-80 school year; |
| September 13, 1979 | Plaintiff received a "Contractual Continued Service Notification" from defendant, stating the salary plaintiff would receive for the 1979-80 school year, with a copy of the liquidated damages policy attached; |
| October 19, 1979 | Plaintiff resigned from his teaching position in defendant's schools. |

Pursuant to the liquidated damages policy, defendant withheld $715.92—4% of plaintiff's contract salary—from his final paycheck. Plaintiff filed a complaint seeking recovery of that amount, and defendant subsequently filed a counterclaim for declaratory judgment asking the court to determine the validity of its liquidated damages policy. The trial court held that the policy was valid and entered judgment in favor of the defendant.

I

Plaintiff-teacher contends that he was not bound by the liquidated damages policy because it was not a part of any contract between himself and defendant. We disagree, for he accepted the policy as a part of his 1979-80 teaching contract.

■■■ What occurred between the teacher and the board in September 1979 was essentially an offer and acceptance. On September 13, defendant offered plaintiff two terms of employment in return for his teaching during the 1979-80 school year: (1) a salary of $17,898 and (2) the liquidated damages policy. Like any offeree, he had the freedom to accept the offer or reject it. That plaintiff signed no document containing the liquidated damages policy does not mean he never accepted it, for contract law recognizes various modes of acceptance other than signing a piece of paper. If, for instance, an offer does not specify a particular manner of acceptance, an offeree may accept by performing the act contemplated by the offer. (*Yoder v. Rock Island Bank* (1977), 47 Ill. App. 3d 486, 362 N.E.2d 68; *Central National Bank & Trust Co. v. Consumers Construction Co.* (1972), 5 Ill. App. 3d 274, 282 N.E.2d 158; see Restatement (Second) of Contracts §§31 and 53 (1973).) Under such

circumstances, the offeree is regarded as having accepted the contract by *beginning* performance in a way that would bind him to complete it. (*Village of Hoffman v. Meier* (1972), 4 Ill. App. 3d 949, 282 N.E.2d 245; see Restatement (Second) of Contracts §52, comment *b* (1973).) Another means by which an offeree may be regarded as having accepted a tendered contract is by accepting the benefits of the contract. *Toto v. Durand & Kasper Co.* (1919), 214 Ill. App. 449; *James v. P. B. Price Construction Co.* (1966), 240 Ark. 628, 401 S.W.2d 206.

■■ Applying these principles, we find that plaintiff accepted the liquidated damages policy, as part of his 1979-80 teaching contract, sometime after September 13, 1979, the date upon which he received official notice of the policy. Defendant's offer did not solicit a return promise from plaintiff to teach during the 1979-80 school year. Plaintiff therefore could accept it by beginning performance in a way that would bind him to complete it. Thus, perhaps by merely continuing his duties after September 13, he accepted the policy. But we need not rely upon such a slender reed. Rather, we see plaintiff as having accepted both the liquidated damages policy and the $17,898 salary by accepting a paycheck reflecting the salary he was to receive under the September 13 notification.

The record does not specifically show that plaintiff received a paycheck between September 13 and October 19. However, teachers' salaries are required by statute to be paid monthly. (Ill. Rev. Stat. 1979, ch. 122, par. 24—1.) Since the period of time between plaintiff's actual notice of the liquidated damages policy and his resignation exceeded one month, he of necessity received a paycheck during that time. We hold, therefore, that upon his acceptance of that paycheck he accepted the terms of employment defendant had offered for the 1979-80 school year—including the liquidated damages policy.

If plaintiff found the policy repugnant when he learned of it on September 13, 1979, it became incumbent upon him to manifest some kind of objection. He could not simply wait until the policy adversely affected him and only then decide that he did not approve of it. A tenured teacher who does not wish to work under terms proposed for a new school year continues working under the terms and conditions of employment for the previous year. (*Bond v. Board of Education* (1980), 81 Ill. 2d 242, 408 N.E.2d 714.) In *Bond*, plaintiff teachers refused to sign a contract containing a no-strike clause. The supreme court upheld the school board's decision to pay signing teachers under the higher salary scale for the new year and held that the nonsigners were properly payable under the prior year's scale. See also *Davis v. Board of Education* (1974), 19 Ill. App. 3d 644, 312 N.E.2d 335; *Allen v. Maurer* (1972), 6 Ill. App. 3d 633, 286 N.E.2d 135.

■ Thus, plaintiff in this case had the right to demand payment under the 1978-79 salary schedule and not be bound by the liquidated damages policy. But he cannot at a later time, when the policy becomes a burden to him, claim that he has not accepted it while at the same time clutching tightly to the salary increase he received for the 1979-80 school year.

## II

■ The fact that plaintiff accepted the liquidated damages policy is not, however, the end of our inquiry, for if defendant lacked the authority to adopt the policy, then it is void. (See *Beaver Glass & Mirror Co. v. Board of Education* (1978), 59 Ill. App. 3d 880, 376 N.E.2d 377; *Wesclin Education Association v. Board of Education* (1975), 30 Ill. App. 3d 67, 331 N.E.2d 335.) A school board has no inherent powers. (*Dato v. Village of Vernon Hills* (1965), 62 Ill. App. 2d 274, 210 N.E.2d 626.) Rather, its powers consist only of ones specifically granted by statute and the powers necessary to carry out those expressly granted. *Craddock v. Board of Education* (1979), 76 Ill. App. 3d 43, 391 N.E.2d 1059; *Byerly v. Board of Education* (1978), 65 Ill. App. 3d 400, 382 N.E.2d 694.

Plaintiff's argument that defendant lacked the authority to adopt a liquidated damages policy rests primarily upon his interpretation of section 24—14 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—14):

> "Termination of contractual continued service by teacher. No teacher who has entered upon contractual continued service may terminate such service during the part of the school year when school is in session nor for a period of 60 days just previous to the beginning of the school term except by agreement of the board and the teacher. No teacher entered upon contractual continued service shall be permitted to terminate it during any other part of the school year except by service upon the secretary of the board of written notice of the termination. Any teacher terminating said service not in accordance with this section is guilty of unprofessional conduct and liable to suspension of certificate, as provided under the law relating to the certification of teachers, for a period not to exceed 1 year."

Plaintiff contends that since section 24—14 provides for suspension of the certificate of a teacher resigning in midyear, the legislature intended that to be a school board's only recourse.

However, he has conceded—both in his brief and at oral argument—that defendant would have had an action against him for breach of contract. Plaintiff thereby virtually stipulates his case away, for he admits that the certificate suspension is *not* a school board's only remedy against a teacher who violates the terms of section 24—14.

■■ ■ We have been unable to find a reported case involving such a breach of contract action. However, we see nothing in the School Code or in the case law which would preclude it and therefore conclude that a breach of contract action would have been available to defendant. This conclusion is supported by the fact that a teacher's tenured status is contractual in nature. (*Allen v. Maurer* (1972), 6 Ill. App. 3d 633, 286 N.E.2d 135.) In addition, defendant's authority to pursue such a remedy rests upon its duty to exercise firm control over the school district's finances in order to contain education expense. *Bond v. Board of Education* (1980), 81 Ill. 2d 242, 408 N.E.2d 714.

If defendant had the authority to pursue a breach of contract action, then it necessarily follows that it had the authority to liquidate damages in advance. The liquidated damages provision, of course, must conform to the requirements Illinois courts have laid down for testing the validity of such contract terms. If the provision is in fact a penalty imposed upon a party to compel performance of a contract rather than a term giving compensatory damages to the nonbreaching party, then it is unenforceable. (*Scofield v. Tompkins* (1880), 95 Ill. 190; *Heckmann v. Mid States Development Co.* (1965), 60 Ill. App. 2d 113, 207 N.E.2d 715.) In *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 359, 134 N.E.2d 329, 333, our supreme court quoted Restatement of Contracts §339(I) (1932), as a declaration of the requirements a party must meet in order to show that a contractual provision is for liquidated damages and is not a penalty:

> " 'An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.' "

Courts also require that the parties have shown an intent to agree in advance to settle damages for a breach. (*Curtin v. Ogborn* (1979), 75 Ill. App. 3d 549, 394 N.E.2d 593.) Further, the court in *Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 107, 373 N.E.2d 863, 869, said, "The damages provided must be a specified amount for a specific breach to be paid as an alternative to performance and not as a penalty for nonperformance."

The liquidated damages provision at issue here clearly conforms to the *Builder's Concrete* requirement of "a specified amount for a specific breach." Also, the liquidated damages provision itself, which plaintiff accepted, shows an intent to agree in advance to settle damages for a breach.

■■ Plaintiff contends that 4% of his salary bears no relationship to

defendant's actual damages. In this regard he points out that defendant presented no evidence that it incurred any losses whatever. But a party seeking to enforce a liquidated damages clause does not need to present evidence of his actual damages. (*Hayden v. Keepper-Nagel, Inc.* (1978), 62 Ill. App. 3d 828, 379 N.E.2d 116.) Such a clause would be of no use if a party still had to prove up his losses. The reasonableness of a liquidated damages provision is to be determined as of the time of contracting, not at some time following a breach when "the evidence is in" on actual damages.

Looking at the provision from that locus, we agree that defendant could be expected to incur considerable expense in finding a suitable replacement for plaintiff. In addition, defendant's school system would likely be disrupted by a resignation occurring in midyear. Plaintiff makes much of the fact that he was an experienced teacher and that defendant probably saved money by hiring a less experienced teacher who would earn a lower salary. First, the record does not indicate whether that in fact occurred or even whether plaintiff was actually high on the salary scale. But more importantly, paying a lower salary to a less experienced teacher would still not compensate defendant for having to bring onto its staff—in midyear—a teacher unfamiliar with the school system and thus perhaps less effective in his teaching than someone who had filled the position from the beginning of the school year. These losses were ones to which it would be difficult to assign a precise monetary amount. As such, they are particularly amenable to being compensated through a liquidated damages provision.

■■ We find that 4% of plaintiff's salary is an eminently reasonable estimate, in advance, of the losses defendant could be expected to suffer in the event of plaintiff's breach. It is not so large that it appears on its face to be a penalty. Also, the percentage method of computing liquidated damages is particularly appropriate in a teacher's contract. A higher salary denotes more experience and/or education. Thus, the higher a teacher's salary, the more difficult it would be to find a comparable replacement, and the more disruptive his departure likely would be to the school system.

Plaintiff attacks the reasonableness of the provision by pointing out that it would exact the same damages from a teacher whether he resigned the first week or the last week of the school year. That argument, however, misses the mark, for the kinds of losses defendant could be expected to suffer would tend to change very little from one time of year to another. Perhaps if a teacher were to resign in the last week of school, defendant would be spared the expense of seeking a replacement. However, that saving could arguably be offset by the added disruption caused by a resignation at that time in terms of deciding whether students

should pass or fail and accomplishing the teacher's statutory year-end duties. See Ill. Rev. Stat. 1979, ch. 122, pars. 24—17, 24—18.

## III

The parties' briefs argue at some length whether the various provisions of the School Code can be construed as authorizing a school board to adopt a liquidated damages provision. Because we have concluded that defendant's authority to pursue a breach of contract action carries with it the authority to liquidate damages in advance of breach, we have not found it necessary to take the tack these arguments would suggest. But even were we to decide the case by going through that twisting road, we would come to the same conclusion.

The School Code gives a board the authority to "fix the amount of [teachers'] salaries, subject to limitations set forth in [the Code]." (Ill. Rev. Stat. 1979, ch. 122, pars. 10—20.7, 24—1.) In addition, section 24—11 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—11) allows a school board "to make such salary adjustments as it deems desirable" even though a teacher is on tenure. There are certain provisions within the Code (e.g., sections 10—20.7, 10—21.1, 24—6.1, 24—2, 24—3, 24—17, and 24—18) which either allow or forbid salary deductions under various circumstances. These are the "limitations," referred to in sections 10—20.7 and 24—1, upon a board's authority to fix salaries.

In substance, this liquidated damages policy is in the nature of a salary adjustment—though not exactly that either, hence our reluctance to decide the case under this analysis. At any rate, it is a salary adjustment not "limited" by any provision of the School Code. We disagree with plaintiff's contention that section 24—14's remedy of certificate suspension limits a board's authority to have a liquidated damages policy. That section merely allows a school board to pursue that course; it does not also suggest that nothing else is in a board's arsenal. We cannot believe that the legislature intended, by section 24—14, to limit a board to a form of redress that would be of no practical value to it or to the school system.

Certain restrictions, however, circumscribe a board's power to adjust salaries. First, section 24—11 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—11) requires that a board provide a hearing to a tenured teacher whose salary is reduced "unless reductions in salary are uniform or based upon some reasonable classification * * *." The record does not indicate whether plaintiff received a hearing from defendant. However, the reduction in salary at issue here was based upon a reasonable classification. Teachers resigning in midyear constitute a recognizable class upon whom it is reasonable to impose a salary reduction because of the disruption they cause to a school system. A hearing was therefore unnecessary.

Second, in its control over salaries, a board is precluded from taking actions which are "arbitrary, discriminatory and unreasonable." (*Richards v. Board of Education* (1960), 21 Ill. 2d 104, 109, 171 N.E.2d 37, 41.) Plaintiff has suggested four ways in which defendant's liquidated damages policy violates this rule from the *Richards* case: (1) it was adopted only 21 days before school began but applied to resignations occurring within 60 days of the beginning of school; (2) it has no objective standards for determining the "extenuating circumstances" under which it will not apply; (3) it provides a resigning teacher with no procedural rights; and (4) it bears no relationship to the costs defendant incurred because of plaintiff's resignation.

■■ We have already disposed of plaintiff's fourth contention. As to the other three, we would find plaintiff's arguments quite appealing had they been properly preserved for appeal. Our examination of the record, however, reveals that plaintiff at no time presented these arguments to the court below. A trial court is entitled to hear *all* of a party's contentions supporting his position. Only with such cooperation and assistance from counsel can a trial judge properly fulfill his duty of deciding a case in conformity with the prevailing law. It is unfair to the trial court, the reviewing court, and the opposing party for an appellant to introduce new arguments for the first time on appeal. We therefore decline plaintiff's invitation to consider those issues he has introduced into the case at this stage, particularly in the absence of any evidence presented by plaintiff to show that he was prejudiced by these matters. *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 335 N.E.2d 448.

### A CAVEAT

■■ Only a cursory look at the record indicates that the parties regarded this as a test case. The practice of pursuing test cases on appeal is commendable in that it allows reviewing courts to decide new legal issues and thus perhaps permit trial courts to deal with such issues with more certainty and expediency in pending cases. However, it is important that even test cases be presented in a manner that gives the trial court an opportunity to fully consider the issues.

■■ Courts encourage the use of stipulations to save time and simplify litigation. (*Central Illinois Public Service Co. v. Badgley* (1974), 24 Ill. App. 3d 294, 321 N.E.2d 26.) However, when, as here, all of the evidence is by way of stipulation, it is necesary that the stipulations be thorough and complete. They therefore should be prepared in advance of trial. In the case at bar, the parties merely made an oral stipulation on the day that a bench trial had been scheduled. As our opinion suggests, the stipulation was so riddled with holes that we have been left with an endless chain of

unanswered questions. We cannot decide a case in a vacuum, isolated from the flesh-and-blood facts giving rise to the litigation. This test case has come dangerously near to asking us for an advisory opinion, which we would lack the authority to give. *County of Cook v. Ayala* (1979), 76 Ill. 2d 219, 390 N.E.2d 877.

Affirmed.

Mr. JUSTICE GREEN, specially concurring:
Whether a case be tried by stipulation or the presentation of evidence, with hindsight we can usually find issues that might have been more fully developed. I deem the stipulation here to be adequate and have no concern that we are merely giving an advisory opinion as to a hypothetical situation.

I concur in the result reached and in all other aspects of the well-written and reasoned opinion of Mr. Justice Mills.

Mr. JUSTICE CRAVEN, dissenting:
I cannot agree with the majority opinion either as to result or reasoning. The opinion seems to me to be internally inconsistent and basically legislative in character.

In Illinois, a teacher is paid according to contract terms agreed to and if new terms are not agreed to, then a teacher on tenured status continues to serve on the basis of the preceding year's contract. In this case, there is no indication that there was a contract for the 1979-1980 school year. I find no indication or basis in the record for the assumption in the majority opinion that the salary for the 1979-1980 school year was greater than that of the preceding year.

In any event, this record tells us that the plaintiff-teacher began teaching duties on August 27, 1979. It was not until the middle of September that the school board gave him notice of its "policy" that purported to require the payment of liquidated damages in the event a teacher terminated during the school year. That policy somehow or another is engrafted upon the new contract or the extension of the old contract, whichever is applicable. Terms and conditions of a contract are ordinarily mutually agreed, not unilaterally imposed.

We do not have the question of whether liquidated damages for termination can be imposed as part of a contract under the authority to fix salaries. Rather, we have a school board imposing a policy on existing contracts without authority, and, as I indicated, by unilateral action.

The opinion is internally inconsistent in that it says on the basis of cited cases that an agreement fixing damages for breach of contract must be reasonable as to damages and bear some relationship to the harm

caused by the breach. Ascertaining that is, of course, a condition precedent to enforcement of the liquidated damages provision. The majority opinion verbalizes approval of that and finds no difficulty in this case. Later in the opinion, the majority indicates that the fact that the liquidated damage provision has no objective standards for determining "extenuating circumstances," that it was adopted only 21 days before school began, that it applies to teachers without reference to date of resignation, and that it gives a resigning teacher no procedural rights suggests its invalidity. These arguments in opposition to the liquidated damage provision are at least found to be "quite appealing" had they been properly preserved for appeal. They are preserved for appeal. Indeed, if any of those conditions exist, and they all do, the provision is invalid and unenforceable. The majority, however, finds the liquidated damage provision valid and concurrently the arguments against it quite appealing.

I understand the law of this State to be that a board of education does not have general governmental powers but rather it has only such powers as are legislatively granted to it. *Beaver Glass & Mirror Co. v. Board of Education* (1978), 59 Ill. App. 3d 880, 376 N.E.2d 377. The legislature by section 24—14 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—14) made provision for sanctions in the event that a teacher breached a contract by resignation during the school year. That sanction, legislatively provided, makes a teacher liable for suspension of the teaching certificate for a period not to exceed one year. If the teacher's conduct here offends that statute, the board's remedy, by law, is found in that provision. If such remedy is inadequate or without realistic meaning, the remedy lies in legislation.

The recent case of *Bond v. Board of Education* (1980), 81 Ill. 2d 242, 408 N.E.2d 714, does hold that a school board's authority with respect to teachers' salaries is subject only to limits expressly fixed by the School Code or to constitutional proscriptions against arbitrary, discriminatory and unreasonable conduct. This "policy" for liquidated damages is based upon an improper classification and is discriminatory. It imposes the same sanction on a teacher that quits during the first week of the year as that imposed upon a teacher who may resign at or near the end of the year.

Finally, I do not share the view expressed by Mr. Justice Mills in the majority opinion that there is any infirmity in the stipulation procedure or its content. Agreed statements of fact or stipulations are a commendable way of getting issues before courts and should be encouraged, not criticized.