(No. 54907.— )

RALPH A. ARDUINI, Appellant, v. THE BOARD OF
EDUCATION OF PONTIAC TOWNSHIP HIGH
SCHOOL, DISTRICT 90, LIVINGSTON COUNTY,
Appellee.

*Opinion filed September 30, 1982.*

Ralph H. Loewenstein, of Drach, Terrell & Deffen-
baugh, P. C., of Springfield, for appellant.

Kenneth L. Strong and Alan M. Schrock, of Thomp-
son, Strong & Blakeman, Ltd., of Pontiac, for appellee.

JUSTICE WARD delivered the opinion of the court:

Ralph Arduini, the plaintiff, brought a breach-of-contract action against the defendant, the board of education of Pontiac Township High School, District 90, Livingston County, to recover money withheld from his salary. The plaintiff, who was employed as a teacher by the defendant, resigned during the 1979-80 school year. Upon his resignation the defendant, applying a "liquidated damages policy" it had adopted two months earlier, withheld 4% of his salary as damages for what it claimed was an improper failure to teach for the full school year. The circuit court of Livingston County entered judgment for the defendant, holding that the adoption of the "liquidated damages policy" was a valid exercise of the power granted the defendant under the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 1—1 *et seq.*). The appellate court affirmed, with one justice dissenting. (93 Ill. App. 3d 925.) We allowed the plaintiff leave to appeal to this court under Rule 315 (73 Ill. 2d R. 315).

At trial, the parties stipulated to what were deemed to be the relevant facts. The stipulation was to this effect: For some years prior to the 1979-80 school year Arduini was a teacher in good standing. He qualified for contractual continued service status, that is to say he was tenured for the 1979-80 school year. On September 13, 1979, the plaintiff received a notice from the defendant. It stated:

"CONTRACTUAL CONTINUED SERVICE NOTIFICATION

The Board of Education, School District No. 90, Livingston County, State of Illinois, hereby notifies  Ralph Arduini  , a tenure [*sic*] teacher in said high school of continued contractual service for the school term beginning  August 27,  1979 and ending  May 30,  1980, for the annual salary of  $17,898.00  payable in  9  equal install-

ments at the end of each pay period as scheduled by the Board.

The time schedule and duties of the employee will be assigned by the Superintendent. In general, the work assignment will be as follows:     Industrial Art Club. Contract time: 9 months + 5 days. Five class periods, one planning period.

Your status was reviewed on     March 12, 1979     by the Board of Education. It is with pleasure that they invite you to continue your contractual service in Pontiac High School. This notification is executed in duplicate this     13     day of     September     ,1979."

Attached to the contractual continued service notification was a sheet which read:

"RESIGNATIONS

All contracts between the Pontiac Township High School and certificated personnel are entered into in good faith with the intent that the obligations stated in or implied by the contract are to be met fully.

Procedures for resignations to be effective at the close of a contractual period are adequately covered in the statutes.

Resignations terminated during a contractual period are to be mutually agreed upon by the employee and the Board of Education. These resignations, when initiated by the employee, not only cause undue hardship on the students, but create additional concern for the Board of Education and necessitate the expenditure of funds in seeking a replacement.

When a resignation is initiated by an employee for reasons other than for extenuating circumstances, the resigned shall pay the school district four (4) per cent of contract salary as liquidated-damages for breach of employment contract. Employee initiated resignations will not be honored until a satisfactory replacement assumes the duty of the resigner.

Reference to this policy shall be made in all certificated employee contracts and, or notices of continuance of employment.

Adopted August 6, 1979."

Classes had begun on August 27, 1979, and as stated the plaintiff received the notification on September 13. He taught for 38 days in the 1979-80 school year and then submitted his resignation.

At the time he resigned, the plaintiff had been paid $1,988.66, and a balance of $1,590.94 was due for his services. The board withheld from the balance $715.92, which is 4% of $17,898. The plaintiff brought the breach-of-contract action for the sum withheld. The defendant filed a counterclaim, seeking a declaratory judgment that the described policy is legal and enforceable as part of the plaintiff's contract.

In providing for teacher tenure, the School Code states:

"Any teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least 60 days before the end of such period. ***

\* \* \*

Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to this Act and the lawful regulations of the employing board. This Section and succeeding Sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided. Contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or removals." Ill. Rev. Stat. 1979, ch. 122, par. 24—11.

The purpose in granting tenure is to afford job security

for teachers and to ensure continuity and stability of instruction for students. (*Johnson v. Board of Education* (1981), 85 Ill. 2d 338, 344.) A tenured teacher is under no obligation to enter into a new employment contract. (*Bond v. Board of Education* (1980), 81 Ill. 2d 242, 249.) Under the statute, if a teacher on contractual continued service status does not enter into an employment contract for the coming school year, the teacher will continue under the terms of his previous year's contract. (*Bond v. Board of Education* (1980), 81 Ill. 2d 242, 249-50; *Donahoo v. Board of Education* (1952), 413 Ill. 422, 427.) Of course, "if an offer [is] properly made and unconditionally accepted, it would be in force according to its terms, but if not accepted or conditionally accepted, then the provisions of the Teacher Tenure Law apply." *Donahoo v. Board of Education* (1952), 413 Ill. 422, 427.

The appellate court held that sometime after September 13, when the plaintiff received the contractual continued service notification, he did enter into a contract for the 1979-80 school year, in which he agreed to the liquidated-damages provision. The court said that the contractual continued service notification was, in fact, an offer of employment for the 1979-80 school year and the proposed salary of $17,898 and the liquidated-damages provision were terms of the offer. 93 Ill. App. 3d 925, 928.

The court considered that the plaintiff accepted this offer by accepting a paycheck for what it indicated was the increased salary stated in the offer. The court acknowledged that the record did not show that the plaintiff received or accepted a paycheck between September 13 and October 19, but it said that one must have been received because the School Code requires monthly payment of teachers' salaries. Ill. Rev. Stat. 1979, ch. 122, par. 24—1.

The court held, too, that a school board has the authority to provide for a contract with a liquidated-damages provision. The plaintiff had conceded that if a teacher should

breach an employment contract by resigning during the school year, nothing in the School Code would prevent the school board from bringing a breach-of-contract action against the teacher. If the board could bring an action for damages, the court reasoned, then it could provide for damages through a liquidated-damages agreement. The court found that the liquidated-damages provision was a valid one. 93 Ill. App. 3d 925, 930-31.

The contractual continued service notification constituted, as the appellate court held, an offer to the plaintiff for employment as a teacher for the 1979-80 school year. This was received by him on September 13, more than two weeks after classes had begun. The offer contained a term which was not in the existing contract, namely, the provision for liquidated damages. An offer exists for a reasonable time (1 Williston on Contracts sec. 54 (3d ed. 1957); Restatement (Second) of Contracts sec. 41 (1979)), and as we have observed above, under the School Code, if a tenured teacher does not enter into an employment contract for the coming school year, the teacher continues under the terms of his or her previous year's contract. *Bond v. Board of Education* (1980), 81 Ill. 2d 242, 249-50; *Donahoo v. Board of Education* (1952), 413 Ill. 422, 427.

We deem that the appellate court erred in holding that the school board's offer was accepted. The court concluded that an acceptance of a paycheck at an increased salary constituted an acceptance. The record, however, as the appellate court admitted, does not show that the plaintiff cashed, or even received, a paycheck during the period between September 13, when the offer was received by the plaintiff and became effective, and October 19 when he resigned. The appellate court observed that the School Code requires monthly payment of teachers' salaries and concluded that the plaintiff must have received a paycheck. The record does not show this, and it would be a gratuitous assumption for us as a court of review to consider

that he did.

We would note also that the "salary increase," upon which the appellate court relied in judging that the plaintiff had agreed to the liquidated-damages term, was in fact assumed by the court without discussion. The plaintiff's complaint alleges that his salary for the 1978-79 school year was $17,898. As the dissent to the appellate court's opinion observed, the record does not show that the salary stated in the September 13, 1979, offer was greater than the salary to which the plaintiff was entitled prior to receiving the notice or offer. (93 Ill. App. 3d 925, 935 (Craven, J., dissenting).) The parties stipulated that the defendant is obligated to pay the plaintiff's salary of $17,898 for the 1979-80 year. The stipulation does not contain any statement as to the salary provided in the preceding school year.

Too, the appellate court speculated that the plaintiff may be considered as having accepted the offer "by merely continuing his duties after September 13." (93 Ill. App. 3d 925, 929.) That reasoning is unconvincing. The plaintiff was already in the course of teaching in the 1979-80 school year when he received the offer, and, as shown by the statute and cases cited above, he had the right to continue to teach under the terms of his prior contract without entering into a new contract. As this court recognized in *Donahoo,* "The Teacher Tenure Law does not make it mandatory upon the teacher to either accept or reject [a tendered offer]." (413 Ill. 422, 427.) In such circumstances we cannot agree that the plaintiff's continuing to teach could reasonably be construed as an acceptance of the offer.

Though in view of the disposition we have made it is not necessary to address the question of whether the school board had authority to include the liquidated-damages provision in its employment contract, we consider that it was empowered to do so. The board has statutory authority to engage teachers (Ill. Rev. Stat. 1979, ch. 122,

par. 24—1) and to make agreements with tenured teachers relative to resignations during the school year (Ill. Rev. Stat. 1979, ch. 122, par. 24—14). Authority to provide for liquidated damages in teachers' contracts can be found in that statutory authority. Resignations that are submitted by teachers and that are to be effective during the academic year obviously present severe problems for school administrators. They impose instructional problems for students and vexing difficulties for the administration in obtaining qualified replacements. In some areas the securing of qualified replacements upon unexpected resignations by teachers will be difficult. This court in *Bond v. Board of Education* (1980), 81 Ill. 2d 242, held that a school board may, by contract, treat teachers who were willing to sign contracts containing a no-strike clause on a different basis than those who refused to sign such contracts on the ground that the no-strike clauses would assist school administrators in providing an efficient school system. If school administrations can act to protect themselves and the school system against strikes by teaching personnel, it is not unreasonable to say that there is authority to tender contracts with liquidated-damages provisions to be effective in the event of unexpected and unjustified resignations.

The School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—14) does provide that a tenured teacher who resigns during the school year may be liable for the suspension of his or her teacher's certificate as a penalty. We do not perceive, however, any legislative intention that this statutory provision for penalty is the school board's only remedy in the event of an unjustified resignation during the school year. It is common knowledge that there are dissatisfied teachers who leave their profession and for whom a suspension of teaching certificates would be a matter of indifference or small concern.

We reject, too, the defendant's contention that even if the plaintiff did not assent to the provision for liquidated

damages, it was binding upon him as a salary regulation. The defendant points to the portion of the School Code's tenure provision that states, "Contractual continued service status shall not restrict the power of the board *** to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or removals." (Ill. Rev. Stat. 1979, ch. 122, par. 24—11.) The provision, which the defendant refers to as a "policy," however, is not an administrative salary adjustment but is a proposal for a contractual liquidated-damages clause.

The concept of a liquidated-damages provision is a contractual one. It involves a contract and a term by which the parties provide for the measurement of damages in the event the contract is breached. The provision is agreed upon by the parties. It cannot be imposed by one party to the contract. The school board's statutory authority to make salary adjustments clearly was not authority to fix terms in a teaching contract without the teacher's consent.

For the reasons given, the judgment of the appellate court is reversed. The judgment of the circuit court, too, is reversed and the cause is remanded to the circuit court for entry of a judgment consistent with this opinion.

*Reversed and remanded,*
*with directions.*