Daniel J. **BROUSSARD**

v.

**UNITED STATES of America.**

Civ. A. No. 15287.

United States District Court,
W. D. Louisiana,
Lafayette Division.

Sept. 13, 1972.

William E. Logan, Jr., Lafayette, La., for plaintiff.

Donald E. Walter, U. S. Atty., R. Perry Pringle, Asst. U. S. Atty., Shreveport, La., Charles G. Barnett, Tax Division, Dept. of Justice, Dallas, Tex., for defendant.

EDWIN F. HUNTER, Jr., District Judge.

This is a civil action instituted by plaintiff to recover $3,926.58, together with statutory interest thereon, paid as withholding and Federal Insurance Contributions Act (FICA) taxes for the third and fourth quarters of 1959. Of this $3,926.58, $1,263 represents the amount paid by the plaintiff as a compromise of his 1959 tax liability, and the remainder represents the rest of that liability which became due when the Internal Revenue Service revoked its acceptance of the compromise.

## THE FACTS

During the period from July 1, 1959, to December 31, 1959, Daniel J. Broussard (hereinafter referred to as "plaintiff") and Sam Hemphill were partners in a business known as Broussard and Hemphill Construction Company. The partnership of Broussard and Hemphill Construction Company filed Forms 941, Employers Quarterly Federal Tax Returns, for the quarters ended September 30, 1959, and December 31, 1959, reflecting liabilities for FICA and withholding taxes in the respective amounts of $3,579.70 and $2,042.25. The liability for the third quarter of 1959 was assessed on November 13, 1959, while the liability for the fourth quarter of 1959 was assessed on February 5, 1960. The liabilities thus assessed were assessed jointly and severally against Sam Hemphill and plaintiff as individuals.

On September 11, 1962, the District Director of Internal Revenue received a Form 656, Offer in Compromise, submitted with $300 by plaintiff to compromise the unpaid portion of the employment tax assessments made against him for the third and fourth quarters of 1959. On April 22, 1963, the Internal Revenue Service received an amended offer in compromise submitted by plaintiff covering the same liabilities as those covered by the first offer in compromise. An additional payment of $963 accompanied the amended offer in compromise.

Paragraph 6 of each of the offers in compromise submitted by plaintiff stated:

6. The undersigned proponent waives the benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for 1 year thereafter.

In connection with the amended offer in compromise which he submitted, plaintiff also submitted a collateral agreement which provided that any net operating losses sustained by him for the years 1959 to 1965, inclusive, would not be claimed as net operating loss carrybacks or carryovers under the provisions of Section 172 of the Internal Revenue Code of 1954. Paragraph 4 of the collateral agreement stated:

4. That the taxpayer waives the benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which the offer and this agreement are pending or the period during which any installment under the offer and/or this agreement remains unpaid or any provision of this agreement is not carried out in accordance with its terms, and for one year thereafter.

By letter dated June 20, 1963, Chester A. Usry, District Director of Internal Revenue, New Orleans, Louisiana, notified plaintiff that plaintiff's amended offer in compromise had been accepted. On June 27, 1963, after plaintiff's amended offer in compromise had been accepted, the $1,263 which plaintiff submitted with his offers was applied against his FICA and withholding tax

liabilities for the fourth quarter of 1959 pursuant to the provisions of Section 7809(b) of the Internal Revenue Code of 1954.

By letter dated September 19, 1968, Chester A. Usry, District Director of Internal Revenue, New Orleans, Louisiana, notified plaintiff that the acceptance of his offer in compromise dated June 20, 1963, was rescinded and revoked due to plaintiff's failure to disclose at the time of the offer an asset having a value in excess of $5,000. On June 23, 1969, plaintiff paid $1,186.96 in satisfaction of his remaining liability for the third quarter of 1959 and $1,476.62 in satisfaction of his remaining liability for the fourth quarter of 1959. On August 13, 1969, plaintiff filed three claims for refund with the Internal Revenue Service in which he sought to recover the $1,263 paid with his offer in compromise, the $1,186.96 paid June 23, 1969, in satisfaction of his remaining liability for the third quarter of 1959, and the $1,476.62 paid June 23, 1969, in satisfaction of his remaining liability for the fourth quarter of 1959. By letters dated September 23, 1969, and September 24, 1969, the Internal Revenue Service disallowed the three claims for refund filed by plaintiff.

### THE LAW

There are three principal questions raised by the pleadings:

1. Whether the normal six-year collection period provided for by 26 U.S.C.A. 6502 had expired when plaintiff paid the liabilities.

2. If the six-year period had expired, whether fraudulent activities on the part of plaintiff extended the period for collection.

3. Whether plaintiff had a right to claim a refund of the $1,263 paid in compromise.

In his claims for refund filed with the Internal Revenue Service, and in his complaint filed herein, plaintiff alleged only that collection of the liabilities at issue herein was barred by the statute of limitations contained in Section 6502(a) of the Internal Revenue Code of 1954. Neither the correctness of those liabilities nor the propriety of the District Director rescinding his acceptance of plaintiff's offer in compromise has been challenged.

The liabilities were assessed on November 13, 1959, and February 5, 1960. Pursuant to Section 6502(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6502, the statute of limitations on these liabilities would have expired on November 12, 1965, and February 4, 1966. However, on September 11, 1962 plaintiff submitted an offer in compromise which contained a waiver of the statute of limitations. The statute was thereby suspended for the period during which the offer was pending, or for the period during which any installment remained unpaid, and for one year thereafter. A second offer in compromise was submitted by plaintiff on April 22, 1963. The second offer similarly contained a waiver of the statute.

This second offer of compromise contained a collateral agreement which provided that any net operating losses sustained for the years 1959 through 1965, inclusive, would not be claimed as net operating loss carrybacks or carryovers. The collateral agreement also contained a provision reiterating the waiver of the statute of limitations and agreed to the suspension of the running of the statutory period on collection for the time during which the collateral agreement was pending or the period during which any installment under the offer or the collateral agreement remained unpaid and for one year thereafter. This second offer was accepted on June 20, 1963. The statute of limitations on collecting the liabilities at issue was therefore suspended under the terms of the waivers from September 11, 1962, the date the first offer was submitted, to June 20, 1964, one year after the second offer was accepted.

We reiterate that the second offer waived the benefit of any net operating loss which plaintiff might sustain dur-

ing the taxable years 1959 through 1965 to the extent that any additional taxes paid as a result of that waiver did not exceed the liabilities being compromised, plus accrued interest thereon. The collateral agreement was pending during all taxable years which it might affect. The last taxable year that the agreement might affect was the calendar year ending December 31, 1965. Until December 31, 1965, it was impossible to ascertain the full extent of plaintiff's obligation under the collateral agreement. The waiver contained in the collateral agreement therefore ceased to have any effect one year later, on December 31, 1966.

Paragraph 3 of the collateral agreement gave the Internal Revenue Service the right to terminate the compromise and reinstate the compromised liabilities if the collateral agreement were not carried out in accordance with its terms. The right to terminate the compromise and reinstate the liabilities would have been meaningless if the statute of limitations on collecting those liabilities continued to run during the period covered by the agreement.

▮ We conclude that the statutory period during which the Internal Revenue Service could enforce collection of the liabilities at issue herein was suspended from September 11, 1962, until, at the earliest, December 31, 1966, one year after the last effective date of the waiver contained in the collateral agreement. The liability for the third quarter of 1959 was assessed on November 13, 1959. (Two years and 302 days of the six-year statutory period for collection expired between the date of assessment and the date plaintiff submitted his first offer in compromise). The statutory period was suspended under the waivers from September 11, 1962 to December 31, 1966, at the earliest. When the statutory period for collecting plaintiff's tax liability for the third quarter of 1959 commenced to run again on January 1, 1967, three years and 63 days remained during which the Internal Revenue Service could enforce collection of that liability.

The statute of limitations on collecting plaintiff's FICA and withholding tax liability for the fourth quarter of 1959 commenced to run on February 5, 1960, the date that liability was assessed. Two years and 218 days of the six-year statutory period expired between the date the fourth quarter liability was assessed and September 11, 1962, the date the statutory period was first suspended by the waivers contained in plaintiff's offers in compromise. The statutory period was suspended by the waivers contained in the offers in compromise and the collateral agreement from September 11, 1962 to December 31, 1966. When the statutory period for collecting plaintiff's liability for the fourth quarter of 1959 commenced to run again on January 1, 1967, three years and 147 days remained from the original six-year collection period.

We hold as a matter of law that the statutory period within which defendant could enforce collection of the FICA and withholding tax liabilities assessed against plaintiff for the third and fourth quarters of 1959 had not expired on June 23, 1969, when plaintiff, after the Internal Revenue Service rescinded its acceptance of his offer in compromise, and paid the remaining balance on those liabilities.

▮ Plaintiff also seeks recovery of the $1,263 that he paid in compromise of his liability, and that was then allegedly applied by the defendant to the total tax liability of the plaintiff after the District Director had revoked the compromise. Plaintiff alleges that upon revocation, the United States no longer had a right to collect the tax, that no authorization was given to apply the money to the tax liability, that therefore the money should be refunded to him. However, as discussed, supra, the right of the United States to collect the taxes had not prescribed, so that the plaintiff had a tax liability which was still collectible by the defendant, and which indeed it did collect.

Furthermore the plaintiff's statement that the money submitted with his of-

fers in compromise was held by the United States as consideration for the compromise until the compromise was rescinded is without any foundation in fact or law. The Internal Revenue could not have withheld indefinitely the sums submitted with plaintiff's offer in compromise, but was required by law, upon acceptance of the offer, to pay the sums into the Treasury of the United States and Internal Revenue collections. The Internal Revenue Service followed explicit mandate of law in this regard, and on June 27, 1963, credited plaintiff's compromise payments as Internal Revenue collections to plaintiff's FICA and withholding tax liabilities for the fourth quarter of 1959. The actions of the Internal Revenue Service conformed to the requirements of the Internal Revenue Code, § 7809(b). After defendant has applied the amount in compromise to the unchallenged tax liability of the plaintiff, and after the plaintiff has paid the remainder of this tax liability, it would be useless waste of time at this point to require the Government to return the $1,263 paid in compromise, and then to require the plaintiff to repay it to the Government. As a practical matter, the $1,263 is in the hands of the party to whom it is owed. It should remain there.

Under normal circumstances we would not engage in weighing the relative merits of the opposing views on the issue as to whether or not the plaintiff would be estopped by his actions from pleading the statute of limitations, even if the statute had expired when those liabilities were actually paid. However, the parties, in their pre-trial stipulation, request the Court to rule on this issue.

The record reveals that on September 4th plaintiff executed a financial statement and submitted this to the Internal Revenue Service in connection with his offers in compromise. On the date he executed his financial statement, plaintiff was the beneficial owner of fifty shares of stock in Lafayette Electrical Supply, Inc. Plaintiff testified in state court litigation that he had transferred this stock to protect the stock from the claim of his creditors. He further testified that he only received an "IOU" from the transferee. Neither the stock nor the IOU was listed on the financial statement which plaintiff submitted to the Internal Revenue Service with his offer and compromise. After the offer and compromise was accepted, and after plaintiff's other financial difficulties were resolved, the stock was transferred back to him and the IOU was destroyed. The Government insists that these facts furnish overwhelming evidence that the acceptance of the offer in compromise was induced through fraud and that the Internal Revenue Service relied upon these statements and it was because of these statements that they agreed to accept less in settlement of the tax liabilities.

The question of whether or not plaintiff's acts were willful and fraudulent did present a question of fact and cannot be resolved on the record before us, but we do hold that if the plaintiff was in fact guilty of fraud that it would estop him from pleading the statute of limitations. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L. Ed. 647; Daugette v. Patterson (5th Cir. 1957), 250 F.2d 753.

Defendant is entitled to a decree dismissing plaintiff's complaint with prejudice. Judgment to this effect is attached.