### In re AVILDSEN TOOLS & MACHINES, INC., Debtor.

**Bankruptcy No. 80 B 17654.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 16, 1983.

Malcolm M. Gaynor, David N. Missner, Robert P. Handler, Schwartz, Cooper, Kolb & Gaynor, Chartered, Chicago, Ill., for debtor.

Daniel K. Webb, U.S. Atty., Chicago, Ill., James K. Wilkens, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., for IRS.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This cause came to be heard on the United States of America's (IRS) motion under Rule 60(b) of the Federal Rules of Civil Procedure to vacate a court order entered March 5, 1982. It is the IRS's position that the March 5, 1982 order is invalid because it was not given notice of the proceedings and the court was without legal authority to grant the relief given. Debtor asserts that the IRS is not entitled to relief under Federal Rules of Civil Procedure Rule 60(b) in that the IRS has no grounds as required under the rule and is guilty of undue delay and failure to keep current on the status of its cases. Debtor further asserts that the payments to the IRS which are at the center of this controversy were voluntary payments which should be applied as designated by the debtor.

The court having carefully considered the pleadings, memoranda and entire record in this case hereby denies the IRS's motion to

vacate the March 5, 1982 order and affirmatively finds that debtor's payments to the IRS were voluntary and should be applied as the debtor so designated.

## FINDINGS OF FACT

1. On July 12, 1977 this court entered an order authorizing the debtor to continue operating its business under Chapter XI of the Bankruptcy Act.

2. On July 15, 1980 the debtor in possession paid $77,524.78 to the IRS for back federal withholding and FICA taxes and specifically designated the application of those funds.

3. On July 16, 1980 the court entered an order confirming the sale of the debtor's assets which was held in open court on July 15, 1980. In said order debtor was specifically authorized to pay its outstanding liabilities with the sale proceeds.

4. Pursuant to said order of July 16, 1980 the debtor on July 22, 1980 tendered a restrictively endorsed cashier's check for $107,825.31 to the IRS and obtained a signed, stamped receipt. Said endorsement and receipt specifically stated that the funds tendered were to satisfy debtor's employee withheld taxes for the second and third quarters of 1977. (pre-petition taxes otherwise known as "trust fund taxes" for which corporate officers may be individually liable under Section 6672 of the Internal Revenue Code).

5. On December 29, 1980 debtor's Chapter XI proceeding, 77 B 4923, was dismissed and on December 30, 1980 debtor filed its petition for reorganization under Chapter 11 of the new Bankruptcy Code (80 B 17654).

6. On March 6, 1981 the IRS District Counsel issued a memorandum to the IRS District Director with respect to the $107,-825.31 payment instructing that the funds be reapplied so as to satisfy the government's outstanding claim for post-petition liabilities and then the government's outstanding claim for pre-petition non-trust fund taxes, followed by pre-petition trust fund taxes.

7. On April 15, 1981, three 100% penalty assessments under Section 6672 of the IRS Code in the amount of $144,863.31 were made against debtor's former officers Edward Avildsen, Robert Avildsen and Morton Balon.

8. On March 5, 1982 this court, on debtor's motion, entered an order finding debtor's payments to the IRS voluntary and ordered the IRS apply said funds as the debtor directed. The IRS was not given prior notice of the March 5, 1982 hearing and no arguments were heard on the motion.

9. On June 29, 1982 the court entered an order confirming the debtor's plan of reorganization which provided that the IRS would be paid in full in six annual installments. The IRS filed no objections to said plan.

10. On March 3, 1983 the United States presented its motion to vacate this court's order of March 5, 1982.

## ISSUES

1. Whether under Rule 60(b) of the Federal Rules of Civil Procedure the IRS is entitled to relief from the court order of March 5, 1982.

2. Whether the payment of $77,524.78 made by the debtor to the IRS on July 14, 1980 and $107,825.31 made on July 22, 1980 should be applied as designated by the debtor, i.e. were the payments voluntary payments or payments made pursuant to a binding agreement between the debtor and the IRS?

## DISCUSSION

Rule 60(b)(6) of the Federal Rules of Civil Procedure vests power in courts to enable them to vacate judgments or orders whenever such action is appropriate to accomplish justice. *Rader v. Cliburn,* 476 F.2d 182 (6th Cir.1973). Lack of notice of the entry of a judgment or order does not ipso facto mean that a judgment must, can or should be reopened. The granting of a 60(b)(6) motion should be considered only where lack of notice has operated to preju-

dice a substantial right or remedy that would otherwise have been available. *Radack v. Norwegian America Line Agency, Inc.,* 318 F.2d 538 (2nd Cir.1963).

There is no dispute as to the fact that the IRS had no notice of the motion of March 5, 1982 in which the court entered an order finding that payments made to the IRS were voluntary payments. The order was entered on counsel for the debtor's representations that no notice was given nor none needed. The IRS apparently did not learn of the entry of the order in question until November 23, 1982 and up until March 3, 1983 the court was unaware of the fact that the IRS did not agree that debtor's payments to it were voluntary. However, in order to determine whether the court should vacate its March 5, 1982 order in order to do justice to the IRS, the court will examine the merits of the IRS's position on involuntariness of the payments.

This controversy revolves around the following provisions of the Internal Revenue Code of 1954: Section 3402 which requires that employers making payments of wages shall deduct and withhold income taxes upon such wages; Section 3402 which establishes that the employer shall be held liable for the payment of the tax required to be deducted and withheld; (there are similar provisions governing the collection of social security taxes and excise taxes); Section 3102(a) which places the duty of collection upon the employer; Section 3102(b) which imposes personal liability for the tax upon the employer; and Section 7501 which provides that the withheld or collected taxes shall be held to be a special fund in trust for the United States.

Not infrequently, corporate employers of businesses having financial difficulties fail to set aside and pay over to the government the taxes they have withheld from their employees. Employees from whose wages the taxes are withheld are still credited with those amounts against their tax liability, even if the employer did not pay over the money to the government. Therefore, to protect the United States Treasury from loss, Congress in Section 7501 of the IRS Code imposes personal liability on those who control the financial affairs of the corporation and have the duty to withhold and pay the taxes.

■ Taxpaying employers will often make lump sum payments to the IRS to clear up liabilities for such things as failure to turn over withheld taxes. In general, when a taxpayer submits a voluntary payment as such to the IRS, he is entitled to designate the tax liability to which the payment will be applied. When a corporation is making a voluntary payment it often designates that the payment be applied to the Section 7501 trust fund liability in order to relieve its officers from personal liability for such taxes. This is what the debtor did when it made its payments on July 15 and 22, 1980.

■ In the case of withholding taxes, it is the policy of the IRS to apply *involuntary* payments from the corporation to the employer's portion of social security taxes rather than to the trust fund taxes that are withheld from employee's wages. The IRS indicates that its application policy is consistent with the purpose of Section 6672 liability—which is to encourage responsible persons to hold taxes that are withheld from employee's wages in trust and see that sums withheld are paid over to the government when they are due. (See Policy Statement P–5–60, 1 Administration, CCH Internal Revenue Manual at 1305–15).

Thus, it is the government's position that where they must resort to administrative or judicial action in order to collect trust fund taxes due it, the corporate taxpayer may not designate how to apply the money for the purpose of extinguishing the responsible person's liability for trust fund taxes. The question to resolve, therefore, is whether the payments made to the IRS by the debtor while in a bankruptcy proceeding were involuntary payments which the IRS may apply as it deems appropriate or were they voluntary payments or payments that the debtor may designate the application of for another reason?

The IRS has relied heavily on three cases supporting its position that payments in a bankruptcy context are not voluntary, bankruptcy courts may not order application of such payments and the IRS may apply these payments as it deems appropriate. (*Monday v. U.S.*, 421 F.2d 1210, 1218 (7th Cir.1970); *In re Hubler Rentals, Inc.*, 79–2 U.S.T.C. ¶ 9621 (E.D.Pa.1979); *In re Vincent-McCall*, 68–2 U.S.T.C. ¶ 9591 (E.D. Wis.1968).)

However, the court having carefully read the above three cases, finds that said cases do not stand for the broad policies the IRS asserts they stand for. In *Monday, supra*, the issue was whether or not officers of the bankrupt corporation were personally liable for the bankrupt's failure to pay to the government social security and income taxes withheld from its employees. The 7th Circuit in reversing the lower court's ruling that the plaintiffs did not willfully fail to pay the taxes, held that the personal liability imposed upon the individual taxpayer by Section 6672 of the Internal Revenue Code is separate and distinct from that imposed upon the employer under Section 3403 of the Code and the separate nature of the tax liabilities imposed upon the corporate officers precluded their assertion of any satisfaction of the company's liability for withholding taxes as a satisfaction of their individual liability under Section 6672. The controversial footnote 7 of the *Monday* case simply states " . . . While the referee's order *in this case* cannot satisfy or remove the officers' liability, it might nevertheless bar action against the Mondays (plaintiffs) were they to show that an administrative practice existed, such as referred to in *Spivak v. United States*, 370 F.2d 612 (2 Cir. 1967), that the government would not press its claim against the responsible officers where the corporate obligation has been met . . ."

The court must agree with the IRS that footnote 7 of *Monday* has nothing to do with the question of whether a tax payment made in a bankruptcy proceeding was voluntary or involuntary. However, in footnote 7 the *Monday* court limited its ruling— that the bankruptcy court may not remove the officers' trust fund liability—to that case only. *Monday* in no way stands for the proposition that a bankruptcy court *may* never direct how the IRS is to apply funds paid to it through a bankruptcy proceeding or plan.

In the case at bar the debtor made two payments to the IRS which are in issue, one on July 15, 1980, prior to the confirmation of sale of the debtor's assets and one on July 22, 1980 after said confirmation of sale. When both of these payments were made, debtor specifically directed the application of those funds to satisfy trust fund taxes. The checks tendered to the IRS were restrictively endorsed with said directions. The IRS accepted these checks, gave the debtor signed stamped receipts for the July 22 payment and applied the funds as so directed.

Only on March 6, 1981, eight months after acceptance of the checks, did the IRS apparently object to or disagree with debtor's directions and reapply the funds as it so desired. Thereafter, on April 15, 1981 the IRS assessed three 100% penalties under Section 6672 of the Internal Revenue Code against three of the debtor's officers. The issue here is not whether debtor's officers were personally liable for debtor's failure to pay the withheld taxes. The issue is whether or not debtor's 1980 payments were voluntary and should be applied as debtor so directed. Also, inherent in this inquiry is whether or not the IRS's conduct in accepting and applying the proceeds as directed and then reapplying said proceeds eight months later as it so desired, was proper or permissible.

█ The IRS in support of its position, also relies on the cases of *In re Vincent-McCall Co.*, supra, and *In re Hubler Rentals, Inc.*, supra. In *Vincent-McCall* the court followed the case of *In re Melody Circus Theatre, Inc.*, No. 56–B–926 (Bankr. Ct.E.D.Wis., 1961) which held that the bankruptcy court in that case did not have the authority to order the IRS to apply a dividend received from a bankrupt estate in any certain manner. *Vincent-McCall* goes

on to affirm the well settled doctrine that in cases of involuntary payments, a debtor has no right to direct how the payments made shall be applied. The court in *Vincent-McCall* however, did not rule that all payments made to the IRS by bankruptcy debtors are involuntary or that bankruptcy courts may never order the application of funds payed by debtors to the IRS. The *Vincent-McCall* ruling was very specific and restrictive. Further, the court in *In re Hubler Rentals* is mistaken when it says that *Vincent-McCall* stands for the proposition that in the context of a bankruptcy distribution, a dividend paid to a creditor is *by nature* an involuntary payment. A close reading of *Vincent-McCall* as pointed out above, very clearly reveals that the court's ruling was not as the *Hubler* court indicated, but much more restrictive.

The debtor, in asserting its position that the payments made to the IRS were voluntary and should be applied as directed by the debtor, relies heavily on the recent 7th Circuit case of *Muntwyler v. U.S.,* 703 F.2d 1030 (1983). In *Muntwyler,* Air Mid-America Airlines, an Illinois corporation, assigned all of its assets to a trustee for the benefit of its creditors. The IRS filed a claim with the trustee for unpaid trust fund and non-trust fund taxes. The trustee tendered three checks to the IRS all of which directed that the amounts be applied to the trust fund portions of the corporations tax liabilities. The IRS accepted the payments but refused to apply the funds as directed. Instead, the IRS allocated the entire amount to non-trust fund liabilities and assessed the corporate officer, Muntwyler, certain amounts for trust fund taxes. The taxpayer filed suit against the IRS for refund of the amounts paid on the trust fund liabilities and the main issue before the court was whether or not the payments made by the corporation were voluntary and should have been applied as the corporation directed when it made said payments.

Although the *Muntwyler* case did not involve a bankruptcy proceeding but rather an assignment for the benefit of creditors, its discussion of the characterization of payments made to the IRS by debtors is applicable here. The *Muntwyler* court as a starting point examined the frequently cited definition of involuntary payments outlined in *Amos v. Commissioner,* 47 T.C. 65 (1966) which is as follows:

> An involuntary payment of federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the government is seeking to collect its delinquent taxes or file a claim therefore.

*Muntwyler* went on to hold that the distinction between a voluntary and involuntary payment:

> is not made on the basis of the presence of administrative action alone, but rather the presence of court action or administrative action resulting in an actual seizure of property or money as in a levy.

The *Muntwyler* court could find no authorities to support the proposition that a payment is involuntary *whenever* an agency takes the slightest action to collect taxes, such as filing a claim or telephoning or writing the taxpayer to inform him of taxes due. Neither can this court. In *Muntwyler,* the 7th Circuit did not consider the government's mere filing of a claim for back taxes as an "enforced collection measure" thus rendering any payment thereunder involuntary. In substance, the receipt of funds by the IRS here is extremely similar to how the IRS received them in *Muntwyler.* In fact, given the IRS accepted the funds and applied them as directed by the debtor and only eight months later reapplied them as the IRS desired, this situation is more compelling to order the IRS to apply the funds as directed by the debtor than was the case in *Muntwyler.*

The court recognizes that in *Muntwyler* the 7th Circuit specifically stated that the government *might* have been correct in its claim that the payments were involuntary if the corporation had been in bankruptcy. However, *Muntwyler* did not involve a bankruptcy and its comments left wide open the whole question of whether a bankruptcy filing would have changed the situa-

tion. Furthermore, *Muntwyler* stands for the proposition that to determine whether a payment is voluntary or involuntary the normal understanding of the two terms must be considered and the facts of the specific case at hand examined.

It has been pointed out previously that of debtor's two payments to the IRS, one was made before and one after the confirmation of the sale of debtor's assets. The payments were made pursuant to the bankruptcy court order which authorized debtor to pay its outstanding liabilities with the sale proceeds. The IRS accepted the payments and applied them as directed by the debtor. The IRS took no further action until eight months after the payments were made when it reapplied the proceeds and then assessed the 100% penalty against three of debtor's officers.

█ The IRS indicated that it is a general rule that payments made to them by a debtor in bankruptcy are involuntary and may be applied in accordance with their policy of applying funds so that the balance left unpaid are withheld taxes which can be assessed against the responsible officers of the corporation. However, as pointed out earlier in this opinion, there is no sound basis for the general policy the IRS relies upon. (See *Monday v. U.S.,* supra; *In re Hubler Rentals, Inc.,* supra, and *In re Vincent-McCall,* supra.) Instead, in order to determine whether a payment to the IRS is voluntary or involuntary it must be determined whether or not the payment was received through court or administrative action which resulted in an actual seizure of property or money such as in a levy. (See *Muntwyler v. U.S.,* supra, and *Amos v. Commissioner,* supra.) This inquiry requires an examination of the specific facts of each case not just an examination of whether or not the payment was made while the payee was in bankruptcy.

█ In examining the facts of this case, the court does not characterize the sequence of events as one where the IRS had to take specific court action in order to collect the monies it received. Debtor's payment to the IRS was voluntary in every sense of the

word and thus should have been applied as the debtor directed. (*National Bank v. Mechanics National Bank,* 94 U.S. 437, 24 L.Ed. 176 (1876); *Reconstruction Finance Corp. v. McCormick,* 102 F.2d 305 (7th Cir. 1939)).

Furthermore, agreements compromising tax controversies are contracts. *Kurio v. U.S.,* 429 F.Supp. 42 (S.D.Tex.1970). When the debtor tendered its restrictively endorsed checks to the IRS along with directions as to the application of the funds, a contractual offer was made. No evidence has been presented to indicate that any affirmative representations were made by the IRS to the debtor regarding application of the funds (as in *McKenzie v. U.S.,* 536 F.2d 726 (7th Cir.1976)). However, an offeree may be regarded as having accepted a tendered contractual offer by accepting the benefits of a contract, *Arduini v. Bd. of Education,* 93 Ill.App.3d 925, 49 Ill.Dec. 460, 418 N.E.2d 104 (1981), or by performing the act contemplated by the offer. *Central National Bank & Trust Co. v. Consumers Constr. Co.,* 5 Ill.App.3d 274, 282 N.E.2d 158 (1972). *Arduini,* supra. Where it appears that one has in fact made an offer to another person and such person by his acts or conduct has accepted the offer, it will be held that the latter entered into a contract. *U.S. v. O. Frank Heinz Constr. Co.,* 300 F.Supp. 396 (S.D.Ill.1969).

The IRS, in accepting the debtor's restrictively endorsed checks, giving receipts for said checks and applying the funds as directed by the debtor, may be deemed to have performed the acts contemplated by the debtor's offer. Thus the IRS accepted the debtor's offer and having done so it engaged in conduct on which the debtor may reasonably have relied on and therefore the IRS should not be allowed to reject the debtor's offer and reapply the funds as it so desires eight months after acceptance.

Finally, debtor has asserted that the IRS has a duty to inquire as to the status of its claims and the IRS did not affirmatively show that it made any inquiries as to the status of its tax claim herein or otherwise act with diligence in pursuing its claim. In

fact, debtor charges that the IRS neglected its claim at least since November 3, 1982. While the court makes no specific finding regarding this matter, it does consider the IRS's conduct less than diligent and a factor which leads to the court's decision to deny the IRS's Section 60(b) motion.

### CONCLUSIONS OF LAW

Rule 60(b)(6) of the Federal Rules of Civil Procedure vests power in courts to enable them to vacate judgments or orders whenever such action is appropriate to accomplish justice. *Rader v. Cliburn*, 476 F.2d 182 (6th Cir.1973). Lack of notice of the entry of a judgment or order does not ipso facto mean that a judgment must, can or should be reopened. The granting of a 60(b)(6) motion should be considered only where lack of notice has operated to prejudice a substantial right or remedy that would otherwise have been available. *Radack v. Norwegian American Line Agency, Inc.*, 318 F.2d 538 (2nd Cir.1963).

In order to determine whether the court should vacate its March 5, 1982 order in an attempt to do justice to the IRS, an examination of the merits of the IRS's position as to the involuntariness of the payments at issue is necessary. In so doing, the court finds no authority for the proposition that all payments made to the IRS from bankruptcy debtors are involuntary. Instead, in order to determine whether a payment to the IRS is voluntary or involuntary, it must be determined whether or not the payment was received through court or administrative action which resulted in an actual seizure of property or money, such as in a levy. (See *Muntwyler v. U.S.*, supra, and *Amos v. Commissioner*, supra.) This type of inquiry requires an examination of the specific facts of each case and not just an examination of whether or not the payment was made while the payee was in bankruptcy.

In examining the facts in this case, the court does not characterize the sequence of events as one where the IRS had to take specific court action in order to collect the monies received. Debtor's payments to the IRS were voluntary in every sense of the word and thus should have been applied as the debtor directed. (*National Bank v. Mechanic's National Bank*, 94 U.S. 437, 24 L.Ed. 176 (1876); *Reconstruction Finance Corp. v. McCormick*, 102 F.2d 305 (7th Cir. 1939)),

Furthermore, agreements compromising tax controversies are contracts. When the IRS accepted the debtor's restrictively endorsed checks, gave receipts for said checks and applied the funds as directed by the debtor, the IRS entered into a valid contractual relationship with the debtor and must adhere to the terms of that contract.

Therefore, the IRS's lack of notice of the March 5, 1982 order did not operate to prejudice any substantial right or remedy that the IRS would otherwise have had available to it. In examining the merits of the IRS's claim, this court has determined that the payments made to the IRS were voluntary and should be applied as the debtor so directed. Thus, the IRS's motion to vacate the March 5, 1982 order should be denied.

WHEREFORE, IT IS HEREBY ORDERED that the IRS's motion to vacate the court's order of March 5, 1982 is denied and that debtor's payments to the IRS should be applied as the debtor so designated.