794 F.2d 1248
 58 A.F.T.R.2d 86-5405, 86-2 USTC P 9528,
Bankr. L. Rep. P 71,245
 In the Matter of AVILDSEN TOOLS & MACHINE, INC., A Delaware
Corporation, Debtor-Appellant.
Edward B. AVILDSEN and Morton Balon, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 84-2739, 85-1049.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 30, 1985.
Decided July 7, 1986.
 
 David Leibowitz, Schwartz Cooper Kolb & Gaynor, Chicago, Ill., for debtor-appellant.
 Wynette J. Hewett, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.
 Before COFFEY and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 The appellants-taxpayers, Avildsen Tools & Machine, Inc., Edward Avildsen and Morton Balon, two of Avildsen Tools' officers, appeal the district court's order reversing a bankruptcy court decision and imposing a 100 percent assessment penalty, pursuant to 26 U.S.C. Sec. 6672, for failure to pay corporate withholding taxes in violation of 26 U.S.C. Sec. 7501. We affirm.
 
 
 2
 * The first case in this appeal, No. 84-2739, arose from the United States' appeal of an order of the United States Bankruptcy Court for the Northern District of Illinois finding that the appellants' corporation had made a voluntary payment to the IRS for their delinquent trust fund taxes. The second case, No. 85-1049, is an income tax refund action commenced by the appellants to recover a partially-paid tax assessment under section 6672 of the Internal Revenue Code of 1954. Since the determination of liability is dependent on the resolution of the same issues of fact and law, we consolidated these cases for purposes of appeal.
 
 
 3
 The record reveals that on July 12, 1977, Avildsen Tools & Machine, Inc. filed a petition for an arrangement under Chapter XI of the Bankruptcy Act of 1898 (formerly 11 U.S.C. Sec. 701 et seq. 1976) (repealed 1978). Immediately after the filing of the bankruptcy petition, the corporation was appointed debtor in possession in order to operate the business during the reorganization. At the time of the bankruptcy petition, the corporation had failed to pay the government the corporate income taxes and the taxes withheld from its employees' paychecks (or "trust fund" taxes) for the 1977 tax year.[1] The government, in order to protect its claim against the corporation, filed a proof of claim with the bankruptcy court for the delinquent taxes. Three years later, after failing to present a viable plan to reorganize the company as a going concern, the officers of the corporation agreed that it would be in the best interest of the corporation to sell all of its assets. The case was not formally converted to a liquidation proceeding since the corporation was to continue as a shell to take advantage of its tax loss carry forward. On July 15, 1980, the corporate assets were sold pursuant to a court order to International Fastner Research Corporation for $2 million. The bankruptcy court confirmed the sale and specifically ordered the corporation to pay one of the corporation's secured creditors and the expenses that the corporation incurred during the time it acted as the debtor in possession of the bankruptcy estate.
 
 
 4
 On July 22, 1980, pursuant to the court order, the corporation tendered a check for $107,825 to the Internal Revenue Service ("IRS") in partial satisfaction of its prepetition tax liabilities. The check's endorsement stated that the entire amount was to be applied to the outstanding withholding taxes or trust fund taxes due the government. A Ms. Zeh, a special procedures staff technician with the IRS, received the check and applied it in accordance with the endorsement. During the fall of 1980, the corporation's attorney and the IRS negotiated, and eventually agreed to settle, the remaining corporate tax liabilities. The corporation subsequently realized that it did not have sufficient funds available to pay the agreed upon non-trust fund taxes and therefore informed the IRS that it would not pay the agreed upon settlement amount.[2] Apparently, the corporation failed to pay the State of Illinois for taxes it incurred after filing its petition for bankruptcy and the parties believed that the funds the corporation previously expended to pay its tax debts to the United States might have to be recovered by the bankruptcy estate and redistributed to the State of Illinois.[3] In light of the fact that the government might have to return the funds to the bankruptcy court and its belief that the $107,826 payment was not voluntarily made to the IRS, the district counsel for the IRS, on March 6, 1981, directed its staff to reapply the payment against the non-trust fund taxes due the government and assess a penalty, pursuant to section 6672, against the officers of Avildsen for failure to remit to the government its employees' withholding taxes.[4]
 
 
 5
 Thereafter, the appellants requested and received an order from the bankruptcy court directing the IRS to reapply the payment to the trust fund taxes. See In re Avildsen Tools & Machines, Inc., 30 B.R. 911 (Bankcy.N.D.Ill.1983). To support its decision, the bankruptcy court, citing our recent decision in Muntwyler v. United States, 703 F.2d 1030 (7th Cir.1983), held that the corporate payment of taxes to the IRS was voluntarily made and thus the corporation was entitled to direct the IRS to apply the payment against the delinquent trust fund taxes. In re Avildsen Tools & Machine, Inc., 30 B.R. at 918. The bankruptcy court also held that an implied contract arose between the IRS and the taxpayer when the IRS originally agreed to accept a check for repayment of the trust fund taxes and that the IRS was bound by the "terms of that contract." Id. The IRS appealed to the district court. That court reversed the bankruptcy court's decision, finding that since the corporation had made its payment to the IRS during the period of time it was reorganizing under Chapter XI of the Bankruptcy Act the corporation's payment was not voluntary and thus the corporation had no right to direct the application of the payment to the type of liability it chose. In re Matter of Avildsen Tools & Machine, Inc., 54 A.F.T.R.2d (P.H.) 5398 (N.D.Ill.1984), 40 B.R. 253. The district court also found that there was no binding agreement between the IRS and the taxpayer to apply the payments against the trust fund portion of the delinquent taxes since there was no legal consideration for the alleged agreement. Id.[5]
 
 
 6
 On appeal, the appellants reassert their argument that the payment to the IRS was voluntarily made and thus they could direct the IRS to credit their delinquent trust fund taxes. In the alternative, the appellants argue that the IRS "should be required to apply the debtor's funds pursuant to the conditions under which it accepted them." Finally, the appellants ask this court to award them attorney fees if they are successful in this appeal.
 
 II
 
 7
 In Muntwyler v. United States, 703 F.2d 1030 (7th Cir.1983), a panel of this court set forth the standard in this circuit for determining when a payment made by the taxpayer to the IRS is to be considered voluntary. The distinction between a voluntary and an involuntary payment is important since "[w]hen a taxpayer makes voluntary payments to the IRS, he has a right to direct the application of payments to whatever type of liability he chooses." Id. at 1032 (citing O'Dell v. United States, 326 F.2d 451, 456 (10th Cir.1964)). When the payment is involuntary, the IRS's policy is to apply the payment to the non-trust fund taxes due the government. Muntwyler, 703 F.2d at 1032 (citing IRS Policy Statement P-5-60, reprinted in Internal Revenue Manual (CCH) 1305-15). The officers of the corporation, who are responsible for payment of the trust fund taxes, then become personally liable for the shortfall in the payment of the trust fund taxes. See 26 U.S.C. Sec. 6672 (1978). The IRS's policy in applying involuntary payments initially against non-trust fund taxes is consistent with the purposes of section 6672 to encourage those persons charged with the collection of the withholding taxes from employee wages to pay these sums to the government;[6] this policy is also consistent with the underlying purpose of the Revenue Code to award those taxpayers who voluntarily comply with the tax laws. See Muntwyler, 703 F.2d at 1032. In Muntwyler our court adopted the definition of a voluntary payment contained in Amos v. Commissioner, 47 T.C. 65, 96 (1966): " 'An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file claim therefor.' " Muntwyler, 703 F.2d at 1032.
 
 
 8
 In Muntwyler, the company created a common law, non-judicial trust and assigned all of its assets to the trust for the benefit of its creditors. The IRS did not levy upon the property in possession of the trustee for the withholding taxes owed to the government; rather, it filed a claim with a trustee for the taxes due. The trustee sent the IRS a check that was restrictively endorsed noting that the funds were to be applied against the delinquent trust fund taxes; the IRS accepted the check but applied it against the outstanding non-trust fund taxes rather than the outstanding trust fund taxes. Applying the definition of voluntariness recited in the Amos decision, our court held that the IRS's action in merely filing a claim for the taxes with the trustee did not convert the trustee's subsequent payment to the IRS into an involuntary payment and thus the trustee was entitled to direct the IRS to apply its payment to the trust fund portion of the taxes owed to the government. In determining that the mere filing of a claim with the common law trust was insufficient to make the subsequent payment by the taxpayer to the IRS involuntary, the panel in Muntwyler relied on the absence of any court involvement in the filing of the IRS claim:
 
 
 9
 "The distinction between a voluntary and involuntary payment in Amos and all the other cases is not made on the basis of the presence of administrative action alone,but rather the presence of court action or administration action resulting in an actual seizure of property or money as in a levy."
 
 Id. at 1033 (emphasis added).[7]
 
 10
 We do not have to decide whether a payment for delinquent pre-bankruptcy petition taxes made to the government while the corporation is in bankruptcy is voluntary or involuntary since even if we agree that the payment to the government in this case is voluntary, the government was within its rights to reapply the payment since the corporation breached the alleged agreement with the government to settle the amount owed for the delinquent pre-bankruptcy petition taxes. Specifically, in the second part of their brief, the appellants argue that the IRS "should be required to apply the debtors' funds pursuant to the conditions under which it accepted them." Essentially, the appellants argue that a contract arose between the corporation and the IRS when the IRS originally accepted the check and applied the funds consistent with the check's limited, restrictive endorsement directing that the funds be used to pay the trust fund portion of the corporation's delinquent taxes. It is hornbook law that "[i]f the written terms of the draft expressly designate [ ] the purpose for which the payment was made, such designation, upon acceptance of the draft, [becomes] an integral part of the parties' agreement." (Emphasis added). See, e.g., Coastal Plains Development v. Tech-Con Corp., 531 S.W.2d 143 (Ct.Civ.App. Tax 1975); National Bank of Harvey v. Pauly, 280 N.W.2d 85 (N.D.1979); AmJur Bills & Notes Sec. 66 (noting "marginal notations placed on a bill or note at the time of the execution thereof with the intention of making them part of the contract constitute a part of the contract, and must be construed with the body of the instrument to arrive at the true agreement existing between the parties.") However, it is equally true that when one party fails to substantially perform his part of the contract, the other party is not bound by the contractual terms and may rescind the agreement. 4A A. Corbin, Contracts Sec. 1104, at 558, 562-64 (1964); See, e.g., C.G. Caster Co. v. Regan, 88 Ill.App.3d 280, 43 Ill.Dec. 422, 426, 410 N.E.2d 422, 426 (1980) (noting it is well-established that a party "may terminate or rescind a contract because of substantial non-performance or breach by the other party"); Builder's Concrete, etc. v. Fred Faubel & Sons, 58 Ill.App.3d 100, 15 Ill.Dec. 517, 521, 373 N.E.2d 863, 867 (1978) (same); Kampmann v. McInerney, 258 Wis. 432, 46 N.W.2d 205, 207 (1951).
 
 
 11
 In the instant case, we will accept, for the purpose of argument, the appellant's assertion that an "agreement" arose between the taxpayer and the IRS to apply the corporate funds against the delinquent trust fund taxes when the government accepted the corporation's check with the limited restrictive endorsement. Specifically, Johanna Zeh, an IRS tax technician, accepted the check and applied it according to the terms of the limited endorsement on the check of July 22, 1980.[8] The appellants then sought to settle the remaining corporate tax liabilities. The appellants sent a letter dated August 29, 1980, to the Tax Division of the Department of Justice offering to pay $12,000 in settlement of the corporation's remaining corporate tax liabilities. Government Exh. A. On October 15, 1980 the government accepted the defendant's offer to settle the remaining tax liabilities for $12,000 upon the condition that the company also agree to pay the government any future tax refunds resulting from the corporations' tax loss carry forwards or carrybacks. Government Exh. B. The corporation accepted the modified settlement offer on October 17, 1980. Government Exh. C. However, on February 17, 1981, Avildsen sent a letter to the IRS repudiating the settlement agreement stating that the corporation was no longer "in the position to pay $12,000 to the government." Government Exh. E.
 
 
 12
 A settlement of a tax dispute with the IRS requires a closing agreement or compromise. 26 U.S.C. Sec. 7121, 7122.[9] In this case, the corporation owed the government approximately $170,000 in delinquent, pre-bankruptcy petition taxes consisting of $107,000 in delinquent trust fund taxes and $63,000 in non-trust fund taxes (employer FICA taxes) and penalties. Thus, any agreement to settle the pre-bankruptcy petition taxes would have to encompass the entire $170,000. The corporation presented the $107,000 check in payment of the delinquent trust fund taxes and IRS staff technician Zeh agreed to apply the $107,000 check accordingly. The Tax Division of the Justice Department then agreed to accept $12,000 as a down payment on the non-trust fund delinquent taxes and conditioned the acceptance of this payment as a settlement of the remaining pre-petition tax liabilities upon the promise of the company to pay to the government any future tax refunds arising from the corporation's tax loss carryforwards and carrybacks. If the corporation had paid the $12,000 in settlement of the remaining delinquent prebankruptcy taxes, the corporation would have honored its end of the agreement. The corporation, however, breached this agreement when it notified the Justice Department that it was financially unable to pay the $12,000 and thus to fulfill the terms of the "contract." Because of the corporation's breach of the agreement to settle the corporation's delinquent taxes, the government was entitled to withdraw its acceptance of the alleged terms of the agreement entered into between the corporation and the government and apply the corporation's check as it saw fit in this instance to the non-trust fund portion of the delinquent pre-bankruptcy petition taxes. See Broussard v. United States, 352 F.Supp. 685, 688 (W.D.La.1972) (taxpayer not entitled to refund for amount payed to government after government rejected compromise agreement since the taxpayer still owed the government the amount due); cf. In re Tom Le Duc Enterprises, Inc., 47 B.R. 900 (D.Mo.1984) (noting that in the absence of a designation or agreement as to how tax payment is to be applied, IRS may apply the payment received against any amount owed). We hold that under the facts of this case a valid agreement settling the corporate pre-petition tax liabilities no longer existed once the corporation failed to fulfill the terms of its agreement with the government, and thus the appellants have no valid basis for claiming that the government is bound by the check's restrictive endorsement.[10]
 
 
 13
 The decision of the district court is modified and AFFIRMED, and costs for this appeal are awarded to the government.
 
 
 14
 RIPPLE, Circuit Judge, concurring.
 
 
 15
 I agree that the judgment of the district court must be affirmed. In my view, the district court correctly concluded that the tax payment in question, made when the bankruptcy proceeding had been converted to a de facto liquidation, was not voluntary. Muntwyler v. United States, 703 F.2d 1030 (7th Cir.1983), is not, by its own language, controlling in a situation such as the present one where the available funds are being distributed pursuant to the judicial supervision of a bankruptcy court. Id. at 1033, 1034 n. 2. Since the payment was not voluntary, the corporation had no right to direct its application to the type of liability it chose.
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation
 
 
 [1]
 "Trust fund" taxes are those taxes withheld from employees' paychecks that are required to be held in trust pursuant to 26 U.S.C. Sec. 7501. Other corporate tax liabilities, such as corporate income taxes and the employer's share of Social Security taxes are generally denominated as "non-trust fund" taxes. See Holcomb v. United States, 622 F.2d 937, 938 n. 3 (7th Cir.1980)
 
 
 [2]
 In the meantime, in December, 1980, the bankruptcy court approved the corporation's request to voluntarily dismiss its Chapter XI petition under the Bankruptcy Act in order to refile its petition for reorganization under Chapter 11 of the new Bankruptcy Code, enacted in 1978, so as to take advantage of certain provisions in the new Bankruptcy Code
 
 
 [3]
 The parties believed at the time that the State of Illinois' claim may have had priority over the pre-petition claims paid by the corporation
 
 
 [4]
 The following provisions of the Internal Revenue Code of 1954 govern the collection of trust-fund taxes: Section 3402 requires that employers making payments of wages deduct and withhold income taxes for such wages; section 3402 also establishes that the employer shall be held liable for the payment of the tax required to be deducted and withheld; section 3102(a) places the duty of collection upon the employer; section 7501 provides that the withheld or collected taxes must be held in a special trust fund for the United States; and section 6672 imposes personal liability upon those corporate officials in charge of collecting the trust fund taxes who fail to remit these funds to the United States
 
 
 [5]
 The district court reserved final judgment in the refund suit since there was a question as to whether the corporate officials, Avildsen and Balon, were personally liable for the withholding taxes as responsible persons under section 6672. In early January, 1985, the government, Avildsen and Balon entered into a stipulation that Avildsen and Balon were the responsible persons of the corporation and thus were liable for the unpaid trust fund taxes in dispute. The decision was then final and the appellants filed this appeal
 
 
 [6]
 The employee/taxpayer receives a credit from the government for those taxes withheld by the employer, regardless of whether the employer actually pays those taxes to the government. Thus without the penalty against responsible persons, pursuant to section 6672, for failure to pay the withholding taxes to the government, the government would loose significant amounts of income if the corporation proved unable to pay the withholding taxes. See Hartman v. United States, 538 F.2d 1336, 1340 (8th Cir.1976); Moore v. United States, 465 F.2d 514, 517-18 (5th Cir.1972), cert. denied, 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1972)
 
 
 [7]
 Interestingly, we noted in dicta in footnote two of the decision that "[t]he government might have been correct in its claim if the corporation had been in bankruptcy, which it was not." Muntwyler, 703 F.2d at 1034 n. 2
 
 
 [8]
 The appellants and the IRS dispute the amount of supervision that was provided to Zeh in approving the application of the payments to the delinquent trust fund taxes. Appellants submitted an affidavit from Zeh (who is now employed in the private sector) alleging that the "case file for A & M [Avildsen Tool & Machine Company] was under the continuous review of IRS Assistant District Counsel James Harbert from the date of the first telephone contact with A & M's attorney until at least three months thereafter, sometime in October of 1980." For purposes of our analysis we will assume that his allegation is true
 
 
 [9]
 Title 26 U.S.C. Sec. 7121 provides that the "Secretary or his delegate is authorized to enter into an agreement in writing with any person relating to the liability of such person ... in respect of any internal revenue tax for any taxable period." In this case, the parties also failed to enter into a "written agreement" since the corporation was unable to uphold its promise to pay $12,000 in satisfaction of the remaining pre-bankruptcy petition tax liabilities
 
 
 [10]
 Appellants also cite several cases that state the IRS may be bound to apply the payments against the delinquent trust fund taxes if the defendant shows that the government had not previously pressed its claims against the responsible corporate officers for the trust fund tax debts. See Monday v. United States, 421 F.2d 1210, 1218 n. 7 (7th Cir.1970); McCarty, Jr. v. United States, 437 F.2d 961, 971-72 (Ct.Cl.1971); Spivak v. United States, 370 F.2d 612 (2d Cir.1967). The dicta in these cases do not support the appellants' position since the corporation in this case did not pay all of the delinquent withholding taxes. Section 6672 imposes a separate liability upon corporate officers, apart from the corporate liability, see Section 3403, for the shortfall in funding of the withholding taxes. Monday, 421 F.2d at 1218 ("... personal liability imposed upon the individual taxpayer by Section 6672 is separate and distinct from that imposed upon the employer under Section 3403 of the Code."). Monday, McCarty, Jr. and Spivak, supra, note that if the corporate trust fund tax obligations are subsequently paid by the corporation this payment may also relieve the corporate officials of their separate liability for delinquent trust fund taxes under section 6672. In this case, the IRS does not dispute the fact that if the corporation had payed all of its delinquent taxes, including the trust fund withholding taxes, the IRS would not assess a penalty under section 6672 against the officers for the failure to pay the withholding taxes to the government. However, the corporation did not pay all of its taxes; thus the assessment of the penalty against the officers does not constitute a double recovery, rather it makes up for the shortfall in the corporation taxes owed to the government. This position is consistent with a tax policy of the United States to collect the withholding taxes due and owing to the government in order to prevent loss of revenues to the United States Treasury. As in this case, where a corporation in bankruptcy has insufficient funds to pay all of its taxes, and the corporation designates those limited funds to be applied against trust fund taxes (in order to shield its corporate officials from liability for the shortfall in withholding tax payments) the government will not be made whole, unless it assesses the deficiency in the uncollected taxes against the corporate officers, since the government may not, as a practical matter, be able to collect the remaining taxes from the corporation where the corporation has been liquidated