**In re GILLEY CONSULTING ENGINEERS, INC., Debtor.**

**Bankruptcy No. 86–05046–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 10, 1987.

Herbert E. Heitman, Atlanta, Ga., for debtor.

Curtis Bowman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

### ORDER

W.H. DRAKE, Jr., Bankruptcy Judge.

This case is before the Court on an objection filed by the United States of America to the confirmation of the above-referenced debtor's plan of reorganization. At the confirmation hearing held on April 15, 1987, it appeared that the debtor and the United States had resolved all matters raised by the objection except for the question of whether the Internal Revenue Service (IRS) is bound by a provision in the plan which states that all payments made to the IRS pursuant to the plan will be applied first to the "trust fund" portion of

9. Sitting by designation.

the debtor's tax liabilities. The United States asserts that the debtor is not entitled to direct how payments to the IRS will be credited because the payments under the plan are "involuntary."

Trust fund taxes are those deducted and withheld by employers from their employees' wages and are deemed to be held in trust for the United States. *See* 26 U.S.C. §§ 3402; 7501(a). A corporate official who is responsible for collecting such trust fund taxes and who fails to remit the money to the United States is personally liable for the full amount of such unpaid taxes. 26 U.S.C. § 6672. Such a responsible officer of a corporate taxpayer is not personally liable for unpaid non-trust fund taxes, such as corporate income taxes and the employer's share of Social Security taxes.

█ The law is clear that a taxpayer making a voluntary payment to the IRS may designate the manner of allocation of the payment to whatever liability the taxpayer chooses. *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983); *O'Dell v. United States,* 326 F.2d 451 (10th Cir. 1964). Conversely, when a taxpayer makes a payment of an involuntary nature, the taxpayer is not entitled to make such a designation, and the IRS may allocate such payment as it sees fit, pursuant to its statutory duty to maximize collection of taxes owed to the government. *United States v. DeBeradinis,* 395 F.Supp. 944 (D.Conn. 1975), *aff'd,* 538 F.2d 315 (2nd Cir.1976).

█ Most courts which have addressed the question of a taxpayer's right of designation of payments have cited the Tax Court's definition of an involuntary payment:

An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

*Amos v. Commissioner,* 47 T.C. 65, 69 (1966). Also relevant is Policy Statement P–5–60, reprinted in Internal Revenue Manual (CCH) 1350–15, which states that "the taxpayer, of course, has no right of designation in the case of collections resulting from enforced collection measures."

The debtor's contention that payments to the IRS pursuant to a confirmed Chapter 11 plan are voluntary finds support in the following cases: *In re Energy Resources Co., Inc.,* 59 B.R. 702 (Bankr.D.Mass.1986); *In re Lifescape, Inc.,* 54 B.R. 526 (Bankr.D. Colo.1985); *In re A & B Heating & Air Conditioning, Inc.,* 53 B.R. 54 (Bankr.M.D. Fla.1985), *aff'd,* CCH Bankr.Law Rep. ¶ 71,220 (M.D.Fla.1986) (appeal to 11th Cir. pending); *In re Franklin Press, Inc.,* 52 B.R. 151 (Bankr.S.D.Fla.1985); *accord In re Hartley Plumbing Company, Inc.,* 32 B.R. 8 (Bankr.M.D.Ala.1983).

The United States argues that these cases supporting the debtor's position all rely on a questionable line of authority[1] and all fail to analyze the "leading" existing case law, particularly *Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983), which, the United States asserts, supports its position that any court involvement with payments to the IRS is sufficient to render such payments involuntary.

Although there is language in the *Muntwyler* opinion which could be seized upon to support this broad contention by the United States,[2] the case did *not* hold

---

[1] For example, many of these cases cite *In re Hartley Plumbing Company, Inc.,* 32 B.R. 8 (Bankr.M.D.Ala.1983), which analogized payments under a Chapter 11 plan to payments in a Chapter 13 case. The *Hartley* Court then relied on *In re Frost,* 19 B.R. 804 (Bankr.D.Kan.1982), which held that payments to the IRS in a Chapter 13 case were voluntary. However, the District Court subsequently reversed the Bankruptcy Court's *Frost* decision. *In re Frost,* 47 B.R. 961 (D.Kan.1985).

[2] In fact, at least one court within the Seventh Circuit has made such a statement in reversing a bankruptcy court's decision that payments to the IRS by a Chapter 11 debtor were voluntary: "The Seventh Circuit made it abundantly clear that it was the involvement of a court—not the type of bankruptcy—which makes payments by a debtor in bankruptcy involuntary." *Matter of Avildsen Tools & Machines, Inc.,* 40 Bankr. 253, 256 (N.D.Ill.1984) (citing *Muntwyler,* 703 F.2d at 1033).

that any court involvement with tax payments automatically results in such payments being involuntary. The holding of *Muntwyler*, in a nutshell, is that, when a debtor makes a common law assignment of its assets for the benefit of its creditors and the government files a claim for taxes with the assignee/trustee, payments by the trustee/assignee to the IRS are voluntary and can be designated for allocation to trust fund tax liabilities.

In reaching this conclusion, the *Muntwyler* Court did rely on the lack of court action in the case before it in order to distinguish its holding from cases where there was court involvement. In particular, the Court discussed *In re Bulk Sale of Inventory*, 6 Kan.App.2d 579, 631 P.2d 258 (1981), in which the proceeds of an auctioneer's sale of the assets of a corporate taxpayer were deposited into the registry of a state court, where the United States then filed its tax claim. The payments ordered by the Court in *Bulk Sale* were held to be involuntary. However, the *Muntwyler* Court, by distinguishing *Bulk Sale*, merely supports the following proposition: in a situation in which there is no court involvement (and no administrative action resulting in a seizure of property or money), the resulting payments are voluntary. *Muntwyler* is not precedent, and was not intended as precedent, for the converse of this proposition, i.e.: if there is *any* court involvement, the resulting payments are involuntary. In fact, at each point where the *Muntwyler* opinion discusses court action, including dicta about bankruptcy, it appears that what was contemplated was the kind of court action, such as a seizure or a liquidation, which leaves the taxpayer with no options with respect to the treatment of a claim by the IRS.

In a footnote cited by the United States in this case, the Seventh Circuit stated: "The Government might have been correct in its claim if the corporation had been in bankruptcy, which it was not.... We do not equate the assignment for the benefit of creditors with a formal bankruptcy pro-

ceeding." *Muntwyler*, 703 F.2d at 1034 n. 2. It appears to this Court that, since the Seventh Circuit had before it a corporation which had liquidated by making an assignment for the benefit of creditors, the only type of bankruptcy which the *Muntwyler* footnote was intended to refer to is one in which the debtor is liquidated and has no options in regard to payments to the IRS. Further support of this conclusion can be found in the Seventh Circuit's avoidance of an opportunity to adopt a district court's holding that *Muntwyler* dictated the result that payments under a confirmed Chapter 11 plan are involuntary. *Matter of Avildsen Tools & Machines, Inc.*, 40 B.R. 253 (N.D.Ill.1984), *aff'd*, 794 F.2d 1248 (7th Cir. 1986). Instead of adopting this holding, the Seventh Circuit stated:

> We do not have to decide whether a payment for delinquent pre-bankruptcy petition taxes made to the government while the corporation is in bankruptcy is voluntary or involuntary since even if we agree that the payment to the government in this case is voluntary, the government was within its rights to reapply the payment [to non-trust fund taxes] since the corporation breached the alleged agreement with the government to settle the amount owed for the delinquent pre-bankruptcy petition taxes.

*Avildsen Tools*, 794 F.2d at 1252.

In short, the *Muntwyler* Court did not have before it and did not address a situation involving court action which does not result in taking away the debtor's options in regard to the IRS. The Seventh Circuit merely distinguished the case before it, a liquidation not involving any courts, from other cases dealing with liquidation or seizure of assets which did involve courts. As the opinion stated:

> The distinction between a voluntary and involuntary payment in *Amos* and all the other cases is not made on the basis of administrative action alone, but rather the presence of court action or adminis-

---

Interestingly, and as will be discussed later in this Order, the United States Court of Appeals for the Seventh Circuit affirmed the *Avildsen*

*Tools* decision on grounds unrelated to the quoted interpretation of its own *Muntwyler* decision. *Avildsen Tools*, 794 F.2d 1248 (7th Cir.1986).

trative action resulting in an actual seizure of property or money as in a levy. *Muntwyler*, 703 F.2d at 1033. Although the United States asserts that this passage from the opinion supports its contention, this Court interprets this quotation as a statement that there must be an administrative *or judicial* seizure of money or property in order for a payment to be involuntary.

Rather than applying certain statements in *Muntwyler* to a situation not contemplated or considered in the decision, this Court finds the following to be the key statement in that decision: "We will not interpret 'involuntary' to mean something completely at odds with the normal understanding of the term...." *Muntwyler*, 703 F.2d at 1034. This is precisely the rationale behind an opinion by United States Bankruptcy Judge Alexander L. Paskay, which decision, after distinguishing cases involving liquidations under Chapter 11 or "judicial sales," stated:

> Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy. Unlike a taxpayer faced with a government instituted collection proceeding which may lead ultimately to levy upon the taxpayer's assets, a Chapter 11 debtor enjoys great latitude in how and if a plan is proposed and thus how and when the IRS will be paid. § 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the IRS and it is the freedom afforded by these options which dictates the conclusion that payments to the IRS pursuant to a confirmed Chapter 11 plan of reorganization are voluntary.

*In re A & B Heating & Air Conditioning, Inc.*, 53 B.R. 54, 57 (Bankr.M.D.Fla.1985), *aff'd* CCH Bankr.Law Rep. ¶ 71,220 (M.D. Fla.1986) (appeal pending). This Court finds the rationale of *A & B Heating* to be persuasive and adopts its result.

Accordingly, it is ORDERED that the objection of the United States to the confirmation of the debtor's plan of reorganization is OVERRULED. An Order confirming the debtor's plan will be entered separately.